# CHARLESTON.

## ARTHUR *v.* THE CITY OF CHARLESTON.

### Submitted January 11, 1902.   Decided March 8, 1902.

1. CITIES—*Defective Highways.*

    It is the positive duty of a municipality to keep its highways free from obstructions and defects, dangerous to travel thereon in the ordinary modes, to those using reasonable care and prudence, and it is not necessary to allege or prove that the city had notice of such obstructions or defects. (p. 134).

2. OBSTRUCTIONS—*Warning to Public.*

    In cases of temporary necessity a municipality may allow obstructions on the public sidewalks or streets, but the traveling public should be warned of and protected against the same in some proper manner. (p. 135).

3. INTOXICATED TRAVELLER—*Question of Fact.*

    Whether a person is so intoxicated as to be unable to exercise ordinary care or prudence is a question of fact for the jury and unless plainly against the preponderance of the evidence its finding will not be disturbed. (p. 135).

4. INSTRUCTIONS—*Effect of.*

    Though proper instructions may be refused, yet if other instructions are given covering the same questions and to the same effect such refusal is not reversible error. (p. 136).

Error to Circuit Court, Kanawha County.

Action by R. H. Arthur against the City of Charleston. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

H. D. RUMMEL, for plaintiff in error.

E. W. WILSON and W. H. MORRIS, for defendant in error.

DENT, PRESIDENT:

The City of Charleston complains of a judgment in favor of R. H. Arthur for the sum of one thousand dollars rendered by the circuit court of Kanawha County the 24th day of April, 1900, on the verdict of a jury.

The plaintiff Arthur was tripped up by a rope stretched across the pavement on the south side of Kanawha street and fastened to a telephone pole for the purpose of holding the wharf boat during a flood in the Kanawha River.   He sued the city for the damages occasioned thereby, and after the case had once before been in this Court and remanded for trial recovered the present judgment.    The defendant by demurrer to the declaration, plea and instruction raises two principal questions:   *First,* as to whether the defendant was bound to have reasonable notice of the obstruction before being liable for negligence in not removing, marking or barricading the same, and the *second,* as to whether the plaintiff was guilty of contributory negligence by reason of intoxication.

The first question is one of law for the court, the second of fact for the jury.

The question of law was pointedly presented by instruction in the case of *Hesser* v. *Town of Grafton,* 33 W. Va. 547. JUDGE SNYDER on page 552 says with regard thereto, "It may not, however, be improper to say that according to the principles decided by this Court in *Chapman* v. *Millon,* 31 W. Va. 384, and *Riggs* v. *Huntington,* 32 W. Va. 55, we do not think the court erred in refusing to give to the jury the instructions requested by the defendant." Yet the same judge had said in the case of *Curry* v. *Mannington,* 23 W. Va. 19, "But as the question of notice may arise on the new trial, it may be proper to state that the general rule on this question is, that notice to the corporate authorities either express or implied must be shown.   If the defect causing the injury had existed for such length of time that proper diligence would have discovered it, then no notice need be proven; but if the defect arise otherwise than from faulty structure or the direct act of said authorities or their agents and be a recent defect, it is generally necessary to show that the town authorities had knowledge thereof a sufficient time before the

injury to have by reasonable diligence repaired it, or that they were negligently ignorant of it." The court's attention was called to this in the *Hesser Case,* but it was passed by except as before stated. This then must be considered the general rule subject to the modification of our statute. In the case of *Gibson* v. *City of Huntington,* 38 W. Va. 177, this Court approved the holding in the case of *Chapman* v. *Milton,* cited, that "A municipal corporation is absolutely liable for injuries caused by its failure to keep in repair the streets, alleys, sidewalks, roads and bridges," and the word repair was recognized to mean obstructions on the highway, as well as defects in it without regard to the manner in which or by whom such obstructions were placed there. In short that it was the positive duty of the municipal authorities to keep such vigilant watch by day and night over the highways under their charge that they would be free from both obstructions and defects and in a reasonably safe condition for travel in ordinary modes with ordinary care at all times . Hence the municipal authorities are bound to take notice of any obstruction on its highways, and if they fail to do so, they are guilty of negligence, and the municipality is liable for the damages resulting therefrom. It is unnecessary therefore to allege or prove such notice. This may seem a harsh imposition on the taxpayers of the municipality. They are made responsible for the negligence of their officers as their agents. It is thus incumbent upon them in selection of such agents to use such discretion as will secure efficient, vigilant and upright men who will be true to their trust. Otherwise they must foot the bills and pay as they go. Under this law it must be assumed that the municipal authorities were cognizant of and either tacitly or affirmatively permitted the placing of the rope across the sidewalk. This they had a right to do temporarily under the unusual circumstances of the flood but they either should themselves have barricaded the sidewalk or marked the obstruction in such manner as would have warned the public of its situation, or have required the person placing it there to so do. The negligence of the officials was not in allowing the rope to be placed there, but in permitting it to remain without proper warning to or protection of the travelling public. It is insisted that the street was so well lighted that there was no need of special warning. But it may possibly have been so well lighted all other places except where the rope was as to render the ob-

struction the more dangerous. The glare might have been so blinding as to interfere with the passers distinguishing the rope from the shadow of the pole. A single small light in the proper place would have been much more efficient than many dazzling lights in the wrong place. The rope was there, it was not protected and the plaintiff did fall over it and hurt his leg. Hence the statutory negligence of the defendant is conclusively established unless the plaintiff was guilty of contributory negligence. It is claimed that he was so intoxicated as not to be capable of exercising ordinary care and prudence. This is strictly a question of fact. The existence of licensed saloons in the neighborhood resorted to by persons who might abuse their drinking privilege to such a wilful extent as to become incapable of exercising ordinary care and prudence, does not justify the municipal officers in relaxing their vigilance in keeping the highway free from defects and obstructions, but it should be, if any were required, a cause for greater vigilance. If a saloon keeper may be held responsible for damages occasioned by intoxication, the municipality that shares with him his income ought not to be permitted with impunity to maintain traps to break the legs or necks of the unfortunate victims of a beastly and oftentimes uncontrollable appetite. Yet the law excuses the municipality and condemns the drinker if he is so unfortunate while intoxicated as to fall over an unlawful obstruction on the public highway. The municipality's wrong is merged in his intoxication as the injury would not have happened had he remained sober, or sufficiently so as to exercise ordinary care and caution. The jury has determined this question in favor of the plaintiff. It is one of doubt and the Court cannot disturb the finding.

The defendant asked for twelve instructions. Of these 1, 2, 4, 5, 7, 9, 10 and 12 relate to contributory negligence, and 3, 6 and 11 to the condition of the sidewalk and thus negatively to contributory negligence. Instruction 8 refers to the right of the defendant to permit the rope to remain across the sidewalk. The court gave all these instructions except 8, 5 and 12. It modified Nos. 1, 4 and 7, and gave them as modified. The part left off of No. 1 was fully covered by No. 3. No. 4 was modified in leaving out the words "in any degree" which does not materially change the instruction. No. 7 was changed so as to read that the jury is "authorized" to find rather than the jury "must"

find. For the same reason instruction No. 5 was rejected. While it was probably wrong to reject these instructions because of their form, yet as they were fully covered by the other instructions given it was not reversible error for the court to reject them. For the defendant had no right to numerous instructions to the same effect simply containing a change in verbiage and apparently intended as a snare for the court rather than an aid to the jury. All these instructions were simply to the effect that if the plaintiff was guilty of negligence, then the defendant was not liable whether it was guilty of negligence or not. The giving of numerous instructions to the same effect only changed in form and language is not an aid to the jury, and has been and will be continued to be discouraged by this Court. *McCray* v. *Town of Fairmont,* 46 W. Va. 442 (33 S. E., 245); *Shrewsbury* v. *Tufts,* 41 W. Va. 213, (23 S. E. 692); *Plate* v. *Burst,* 42 W. Va. 69 (24 S. E. 580).

Instruction No. 8 refused is as follows. to-wit: "The court instructs the jury that if they believe from the evidence in this case that the Kanawha river, at the time of the accident complained of, was at flood tide, and that the wharf boat was in distress and could not be saved from breaking away only by tying a rope or cable across the sidewalk, where they did tie, and that had said boat broken loose it would have broken loose a number of steamboats and other crafts tied to the bank below where said wharf boat was tied, and thereby caused great loss of property and possibly life, that then in that event said wharf boat company had the legal right to tie said cable across said sidewalk, and it was not negligence on the part of the city to permit said cable or rope to remain until the water subsided to such an extent as to enable said wharf boat company to secure their boat in other ways." This instruction is misleading for the reason that it makes no mention of the duty of the city, in permitting the rope to remain across the street, to properly warn the public as to its situation and condition by proper light or barricade. The court did right to refuse it. The city has the right temporarily to allow obstructions on the streets and sidewalks for any lawful purpose, but while they remain there the travelling public should have notice and warning thereof. It was negligence to leave the rope there in a dangerous condition. And the city could only justify its action by showing that it took

proper steps to protect the public. This was matter of excuse and defence, the burden of which was on the city.

As the record shows no error prejudicial to the defendant, it is unnecessary to consider the error assigned by the plaintiff and the judgment is affirmed.

*Affirmed.*