Syllabus.

|100  231|
|f102  99|

# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## NEWPORT NEWS AND OLD POINT RAILWAY & ELECTRIC CO. v. BRADFORD.

### March 13, 1902.

1. MUNICIPAL CORPORATIONS—*Streets—Public Crossing—Street Railways.*—It is immaterial whether a street which crosses an electric railway is or is not an established public highway when it appears that the crossing is constantly used by the public, and its importance is known to and recognized by the railway company.

2. MUNICIPAL CORPORATIONS—*Defective Streets—Use—Evidence.*—The fact that a street in a dangerous condition was used by others in the same manner and about the same time that it was used by the plaintiff, though not conclusive on a question of contributory negligence, is relevant evidence to be considered in connection with all the facts and circumstances of the case in determining the question of due care on the part of the plaintiff.

3. STREET RAILWAYS—*Obstructing Crossings—Snow.*—A street railway company has no right to obstruct a public street crossing in removing snow from its track if it can reasonably deposit the snow elsewhere. Whether it can so deposit it is a question for the jury under the evidence of the particular case. If there are two or more methods of depositing it of nearly equal convenience, that one must be adopted which will result in the least injury.

4. MUNICIPAL CORPORATIONS—*Defective Streets—Use—Negligence per se.*—It is not negligence *per se* to use a street crossing known to be dangerous, unless the danger is so apparent that, in the exercise of ordinary care, the traveller should not attempt to use it. If reasonably fair-minded men would differ as to the propriety of encountering the danger, then it is for the jury to determine, upon all the facts and circumstances of the case, whether the attempt to cross was an act of negligence or not.

5. TRIAL—*Law and Fact—Province of Court and Jury—Reading Books to Jury.*—It is the duty of the court to instruct the jury as to the law, and it is the duty of the jury to follow the law as laid down by the

court. Counsel should not be allowed to read law books to the jury, as it is calculated to mislead and confuse them, and cause them to disregard the instructions of the court. *Norfolk & W. R. Co.* v. *Harman,* 83 Va. 553, overruled.

6. VERDICTS—*Excessive Damages.*—A verdict for $2,500 as compensation for a broken leg and much consequent suffering will not be set aside as excessive, in the absence of any evidence that the jury were actuated by any improper motive, gross error, or misconception of the subject.

7. VERDICTS—*Negligence.*—Where a case involving the determination of the negligence of the defendant and the contributory negligence of the plaintiff has been fairly submitted to the jury, under proper instructions, their verdict cannot be disturbed unless it is plainly in violation of the law, or is without evidence to support it.

Error to a judgment of the Circuit Court of Elizabeth City county, rendered February 28, 1901, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*O'Ferrall & Regester* and *S. Gordon Cummings,* for the plaintiff in error.

*Bickford & Stuart* and *E. E. Montague,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

An opinion was handed down in this case in January, 1901, reversing the judgment of the Circuit Court, for error in the instructions, and remanding the case for a new trial. *Newport News etc. Ry. Co.* v. *Bradford,* 99 Va. 117.

The second trial, upon practically the same evidence, has resulted, as before, in a verdict for the defendant in error, and the case is again before us for a review of certain rulings of the Circuit Court which it is contended were erroneous.

Proceeding to the consideration of these several assignments of error in their convenient order:

The court is of opinion that the contention is not sound that Hope street was not proven to be a public highway. This question was not raised upon the former hearing of the case in this court, nor was it raised in the lower court upon either trial. On the contrary, the case has proceeded to this point upon the theory that Hope street was a public thoroughfare. The declaration alleges that the accident occurred at "the intersection of Mellen street with another thoroughfare known as Hope street." It was assumed throughout the trial by questions propounded by the plaintiff and defendant, and by the answers of witnesses thereto, that Hope street was one of the streets of Phœbus, and that it intersected Mellen street at the point of the accident. Apart, however, from these considerations, it is abundantly shown that at the intersection of these two streets, whether private or public, there was a crossing constantly used in passing from one side of Mellen street to the other. This crossing is characterized by witnesses as the main or principal crossing in Phœbus. The defendant company knew of the crossing, recognized its importance, and that it had no right to impede travel thereon by obstructing it with snow thrown from its railway. This is shown by the evidence of the superintendent of the company, who says that he directed his men to clean the snow from all the crossings, and that he is positive they did remove the snow from this crossing at Hope street. Under these circumstances, it is immaterial whether Hope street was or was not an established public highway.

The court is further of opinion that there was no error in permitting the plaintiff to prove that persons, other than herself, had walked over the bank of snow alleged to have been piled upon the crossing by the defendant. This evidence was proper to be considered by the jury in connection with other facts and circumstances bearing upon the question of contribu-

tory negligence. This court said in its former opinion that other persons having passed over the obstruction was not conclusive of the question of contributory negligence, but that such evidence was to be considered in connection with all the facts and circumstances of the case in determining the question of due care on her part.

The court is further of opinion that there was no error in the action of the court with respect to the instruction embodied in Bill of Exceptions No. 2. It appears that the company asked for the following instruction: *"The jury is instructed that the defendant railway company was entitled, under its charter and the orders made by the Board of Supervisors of Elizabeth City county, to the use of the bed of Mellen street for the purposes of a street railway, and if its tracks were covered with snow, it had the right to remove it therefrom, provided that in doing so it exercised ordinary care and prudence."*

To this instruction, over the protest of the defendant, the court added these words: *"And where the snow might reasonably have been deposited so as not to obstruct the way of pedestrians passing from one side of the street to the other at street crossings, the depositing of snow at such point so as to create an obstruction is a negligent act."*

This instruction, as amended, conforms precisely to that given on the first trial and heretofore approved; this court saying that the amendment made by the court did not change the legal effect of the instruction as asked for; that it only made the instruction a little more specific, and brought pointedly to the attention of the jury that the defendant, in the exercise of ordinary care and prudence, did not have the right to obstruct the street crossing in removing the snow, if it could reasonably have deposited the same elsewhere.

After the addition was made to the instruction, the defendant moved the court to further add the following words: *"If the snow was allowed to remain for an unreasonable time."* In this

connection, the contention of the defendant is that it was not guilty of negligence in leaving the snow upon the crossing for about three hours after it had been thrown thereon from the railway track.

This contention was made in the same words when the case was first before us, and the court said: "From the necessity of the case, it would seem that a street car company, in operating its cars upon a street, would have the right to remove snow from its track to another part of the street, but in doing so it would not have the right to bank up the snow so as to make it dangerous to use or cross the street, unless the work of cleaning the track necessarily obstructs passage, and then the company is bound to do all that ordinary care requires in removing the obstruction." Citing Elliot on Roads; Shear. & Red. on Neg., &c. In the case at bar, the negligence of the company consisted, not in its failure to remove the snow in a reasonable time, but in putting the snow in the first instance on the crossing. The snow was removed from the tracks of the company by hand and shovel, and the contention of the plaintiff was that this method of removing the snow enabled the company, in the exercise of ordinary care, to avoid obstructing the crossing, by throwing the snow to either side thereof. When two methods of depositing snow of equal convenience, or of nearly equal convenience, may be adopted, that method must be chosen which will result in least injury. Whether the company exercised its right to clear its track with due care to avoid obstructing the crossing, and in such manner as to avoid unnecessary injury and inconvenience to the public, was the question in the case, to be determined by the jury in the light of all the facts and circumstances before them.

The court is further of the opinion that there was no objection to the following instruction given by the court at the request of the plaintiff:

*"The court instructs the jury that though they may believe*

*from the evidence that the plaintiff, Mary E. Bradford, saw the heap of snow alleged to have been piled or thrown up by the defendant company, and knew that it was of a dangerous character, her attempt to cross the same is not contributory negligence, provided that, under all the facts and circumstances of this case, in making such attempt, she was exercising such due and reasonable care as persons of ordinary prudence would exercise under the same or similar circumstances."*

This instruction is in conformity with the views expressed in the former opinion of this court; and the principle therein announced is supported by abundant authority. Shear. & Red. on Neg., sec. 376; Beach on Con. Neg. (3d ed.), sec. 447; Burwell Law of Per. Injuries, sec. 138; 1 Munic. Corp. Cases, pp. 60-483-490; *Gordon* v. *City of Richmond*, 83 Va. 436; *City of Lynchburg* v. *Wallace*, 95 Va. 640. See also *Bass' Admr.* v. *N. Ry. & Light Co., ante* p. 1.

The mere fact that a street crossing is in a dangerous condition, and the danger is known, does not make the act of attempting to cross, in the exercise of ordinary care, negligence as matter of law. To be negligence *per se*, the danger must be so apparent that in the use of ordinary care the traveller should not attempt to cross the street. If reasonably fair-minded men would differ as to the propriety of encountering the danger with ordinary care, then it is a question for the jury to determine upon all the facts and circumstances of the case.

The law is well stated in *Lyons* v. *City of Red Wing*, 1 Munic. Corp. Cases 483, as follows: "The mere fact that a person knows that a sidewalk is in a defective and dangerous condition does not, as a matter of law, impose upon him the duty of abandoning the use of the street, or else use it at his peril. He is bound in such case to use ordinary care, and no higher degree of care; that is, he is bound to use reasonable care, in view of all the circumstances of the case, including his previous knowledge of the condition of the walk."

In the case at bar, the plaintiff says that she knew that the crossing in question was obstructed by a pile of snow, and that this obstruction made the crossing dangerous, but it does not appear that the danger was so apparent that she ought not to have undertaken the passage. On the contrary, she had already passed safely over the obstructed crossing in going to the drug store, and the evidence shows that many other persons had not hesitated to make their way over such obstruction; showing that the danger was not regarded as so apparent that one ought not to encounter it.

In support of the contention of the defendant that the plaintiff was guilty of negligence *per se* in attempting to pass over the crossing in question, the recent case of *City of Winchester* v. *Carroll*, 99 Va. 727, is relied on. The principles laid down in that case are not in conflict with those herein announced. To invoke that decision in support of the defendant's contention is to ignore the facts on which it is predicated. In that case there was a sidewalk 212 feet in length, about twelve feet wide, with a maximum elevation of three feet three inches above the level of the street, and held in position by a perpendicular retaining wall, and without barriers or guard rails to protect it. It appeared from photographs that these physical conditions were manifest and obvious to the most casual observer. It further appeared that the plaintiff was well acquainted with these physical conditions, having repeatedly walked over this sidewalk, and driven along the street below. The plaintiff's own testimony is that, after she came from the Valley Female Seminary upon this elevated sidewalk, she concluded that a better way to get home would be to go out into the street; that not thinking of danger, she deliberately turned and walked over the wall into the street below. Reasonably fair-minded men could hardly differ as to the necessary consequence of such an act. The danger was imminent, was known to the plaintiff, and the injury sustained was the inevitable consequence of the negligent act.

Under these circumstances, the court held the plaintiff guilty of negligence *per se.* Not, as contended, alone because the plaintiff had knowledge of the danger she encountered, but because, in addition to that knowledge, the danger was imminent, so apparent that reasonably fair-minded men could not differ with respect to the injurious consequences that would inevitably flow from any one, however careful, encountering such danger.

The court is further of opinion that it was not error to refuse to allow counsel for the defendant, while arguing the case before the jury, to read to the jury authorities.

It appears from the bill of exception embodying this assignment of error that defendant's counsel offered to read to the jury a definition of what is "a reasonable time," from a case reported in the American & English Railway Cases. The court refused to allow the authority to be read, and called the attention of the counsel to the fact that no instruction defining reasonable time had been asked for; that the court had fully instructed on all points requested, and was willing to instruct on what was "a reasonable time," but counsel did not avail himself of the offer. It further appears that counsel, while arguing the case, offered to read to the jury from the case of *Courtney* v. *City of Richmond,* 32 Gratt. 792, upon the question of what constitutes contributory negligence. The court declined to permit the authority to be read, but allowed counsel latitude in discussing what constitutes contributory negligence, and further permitted counsel to state the circumstances of the Courtney case, and the conclusion of the court.

In this jurisdiction, the rule is well settled that it is for the court to expound the law, and for the jury to pass upon the facts. In *Delaplane* v. *Crenshaw,* 15 Gratt. 457, where the action of the lower court, in arresting the counsel, and prohibiting him from arguing before the jury against the instruction of the court, was under consideration, Judge Lee, speaking for this court, says: "It is a duty which the court owes to its own

self-respect as well as to the speedy administration of justice not to allow counsel to discuss before the jury the same matter which has already been decided by it. . . . Whatever may be the true interpretation of the maxim that 'the jury are the judges of both law and fact,' as applied to criminal cases, it is for the court to expound the law, and for the jury to pass upon the facts." In the case of *Brown* v. *Commonwealth*, 86 Va. 466, the prisoner asked for an instruction that the jury were the judges of the law as well as the facts, but it was refused. The court, through Judge Lewis, after reviewing the authorities, reaches the conclusion that the instruction was rightly refused. In reaching this conclusion, the learned judge quotes with approval as eminently sound the following from an opinion of Mr. Justice Story: "My opinion is that the jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case tried upon the general issue. In each of these cases, their verdict, when general, is necessarily compounded of law and fact, and includes both. In each they must necessarily determine the law as well as the fact. In each they have the physical power to disregard the law, as laid down to them by the court. But I deny that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions or pleasure. On the contrary, it is the duty of the court to instruct the jury as to the law, and it is the duty of the jury to follow the law as it is laid down by the court."

In *Taylor* v. *Mallory*, 96 Va. 18, where the right of counsel, in his closing argument before the jury, to refer to the result of a former trial of the case, and make other remarks not thought to be justified, was called in question, this court said: "It is the duty of counsel in argument to confine themselves to the case at bar, the evidence properly before the jury, and the law as laid down by the court in its instructions; and an unwarranted departure from this duty might make it necessary to set the verdict aside."

In Thompson on Trials, sec. 941, the learned author says that in no civil case, "except according to some early conceptions in actions for damages for slander or libel, are the jury in any sense judges of the law. In such cases the jury must take the law from the court, and not from the counsel. The latter ought not to be allowed to argue questions of law to the jury, or to read them in argument from books of the law." In section 951, the author says: "In those jurisdictions where the charge of the court precedes the argument of counsel, the counsel should be confined in their argument from legal premises to the propositions of law embodied in the court's instructions, and the practice of reading books of the law to the jury ought not to be tolerated."

It being the settled rule in Virginia that it is the duty of the court to instruct the jury as to the law, and the duty of the jury to follow the law as laid down by the court, and it being, further, the prevailing and proper practice, for the court to give its instructions in writing, in advance of the argument, it would seem to follow as a necessary consequence that counsel should be confined, in their argument from legal premises, to the propositions of law embodied in the court's instructions. To allow authorities to be read to the jury from the books would be calculated to confuse and mislead them, and cause them to disregard the court's instructions, and deduce from the books their own idea of the law, which they are not permitted to do. It is often difficult to interpret the language of the books, and a matter of perplexity and doubt to apply the principles involved, or to determine whether the ruling in a given case has any application to the case under trial. These doubts and difficulties are supposed to have been solved by the court, and the law applicable to the particular case deduced from the books, and given to the jury in the form of written instructions. Whatever may be avowed by counsel as the purpose for which authorities are read, that does not obviate the evil effect that would almost

certainly flow from permitting them to be read. The due and speedy administration of justice, to say nothing of the duty which the court owes to its own self-respect, demands that counsel should be confined in their argument before a jury, from legal premises, to the propositions of law embodied in the court's instructions, and should not be permitted to read authorities from the books.

As opposed to this view, counsel for plaintiff in error rely upon the cases of *N. & W. Ry. Co.* v. *Harman's Admr.*, 83 Va. 553, and *Blankenship* v. *C. & O. Ry. Co.*, 94 Va. 459. In the case last mentioned, the court expressly stated that the question was not properly before it, and declined to pass upon it. In the case of *N. & W. Ry. Co.* v. *Harman's Admr.*, the subject is discussed and a contrary view taken. Without, however, prolonging this opinion to review that case, or to determine whether or not the question was there involved and called for a decision, it must suffice to say that, in so far as it is in conflict with the views herein expressed, it is overruled.

The court is further of opinion that the Circuit Court did not err in refusing to set aside the verdict of the jury because it was excessive, or upon the ground that it was contrary to the law and the evidence.

The jury found a verdict for $2,500 as compensation for a broken leg, and much consequent suffering, and there is nothing in the record to suggest that, in doing so, they were acting under the impulse of any improper motive, gross error, or misconception of the subject. Under these circumstances, there being no legal measure of damages, the verdict of the jury will not be disturbed. *Shott* v. *N. & W. Ry. Co.*, 92 Va. 34.

The case was fairly submitted to the jury under proper instructions. The determination of the question of fact, involving the negligence of the defendant company, and the contributory negligence of the plaintiff, rested with the jury. Under these

circumstances, the verdict cannot be disturbed unless plainly in violation of the law, or without evidence to support it.

For these reasons, the judgment complained of must be affirmed.

*Affirmed.*