# Wytheville.

## Williamson v. Southern Railway Company.

### June 15, 1905.

#### Absent, Cardwell, J.

1. Railroads—*Walkways on Bridge—Invited Guests—Licensees.*—The fact that a railroad company builds a bridge for its own use across a river, with a walkway on each side of the tracks, and that persons so using the bridge, after landing, walk along the right-of-way of the railroad company in going to their homes or places of business, and have so used it for many years, with the knowledge of the company, does not constitute such persons the "invited guests" of the company while on said right of way, but mere licensees. This is especially true where danger signals have been conspicuously erected warning persons to keep off the tracks.

2. Action for Negligence.—An action for negligence only lies where there has been a failure to perform some legal duty which the defendant owes to the party injured.

3. Railroads—*Duty to Licensees.*—A railroad company owes no duty of previous preparation for the protection of mere licensees. Its sole duty is to use reasonable care to discover and not to injure such persons when they may reasonably be expected to be on its tracks at a particular point. The obligation is not an absolute one, but it is only to use ordinary care for their protection, under conditions and circumstances as they actually exist at the time and place where the licensee may be reasonably expected.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Meredith & Cocke,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant company. The damages were assessed by the jury at $1,500, subject to a demurrer to the evidence, which was sustained and judgment given for the defendant.

The accident which is the subject of inquiry occurred upon that portion of the main line of the defendant which runs along the south bank of James river, at or about its entry of the company's yards in the city of Manchester. A little northwest of the city of Manchester, in James river, is an island called "Belle Isle," upon which is located an iron manufactory. This island is connected with the south bank, or Manchester side, of the river by a railroad bridge built by the defendant company for its use in hauling freight, upon each side of which is provided a walkway for the use of persons going to and from the iron works. These iron works and the railroad bridge connecting them with the main line of the Southern Railway on the Manchester side of the river have been in operation for many years. When the employees from "Belle Isle" cross the bridge and reach the south bank of the river, they have two routes open to them—one leading away from the railroad and into the city of Manchester, and the other along the right of way of the defendant company into the city. These employees had for many years used both routes, the choice depending upon the point of destination in the city. Those who, for their convenience, adopted the latter route, had always enjoyed its use by the passive acquiescence of the defendant.

The plaintiff had been for "three or four months" an employee of the iron works on "Belle Isle," and on the 27th day of November, 1903, he left the works fifteen minutes before six o'clock to go to his home. When he reached the south bank of the river he pursued, as was his regular habit, the route along the right of way of the defendant company. He walked on the pathway at the side of the track a distance of about fourteen hundred feet, but finding the path rough he looked and listened to ascertain if a train was approaching, and being satisfied that no train was coming, he stepped upon the railroad track and walked thereon for a distance of twenty-five yards, when he looked back and found a "work-train" of the defendant company so close upon him that he could not jump out of the way in time to avoid the injuries complained of. The plaintiff says that it was a very dark night; that the engine was provided with no headlight or lights of any description, and when he looked back it was so dark that he could not see the engine good. He further says that his hearing was poor in one ear, and that it was down-grade at that point, which caused the train to run without making much noise.

It is contended by the plaintiff in error that, when using the track and right of way of the railroad on the south side of the river as a convenient route to his home, he occupied a higher relation to the defendant company than that of licensee it being insisted that "the defendant so built its bridge, with walkways on each side thereof, that the workmen on 'Belle Isle' could come across to the Manchester side and use its tracks as their route to and from their homes; that no invitation in a practical way could have been more strongly given; that it is idle to say that the company only built the bridge to get the men to the shore, and that it never meant for them to use the tracks as their route home. The two things, the bridge and the route, were too closely connected for them to be separated with fairness. The old bridge and route had been used jointly for fifty years, and the new bridge and the route were intended and expected to be used jointly. The use was in fact by invitation."

We have been unable to find any fact or circumstance in the record to support this contention. No relation is disclosed between the defendant and the iron works other than that of common carrier and shipper, and the defendant can hardly be held to have built its bridge from "Belle Isle" to the shore for the benefit of the workmen there employed. It was built for the use and the benefit of the railroad company in hauling freight. The construction of the walkways on each side of the bridge was a mere incident, and while put there for persons to walk on, they served as a proclamation and warning to such persons not to use the track rather than an invitation to use it. When those using the walkways on either side of the bridge reached the shore, they bore no relation whatever to the defendant company. They were uncontrolled and free to go where, when, and by whatsoever route they pleased. Such of them as chose to follow the right of way of the railroad as a convenient route to their homes, did so voluntarily and without invitation from the defendant company. On the contrary, two hundred and forty feet from where the plaintiff was struck there was a large sign four feet square, with the following warning thereon:

### "DANGER—BEWARE."

"The public is notified that these railroad tracks and right of way are no thoroughfare; must be used by trains, and are dangerous for pedestrians who are warned to use the public streets and keep off these private tracks."

This warning is signed by the general manager of the defendant company. It is set up ten feet high and conspicuously in view of the plaintiff every time he passes over the right of way of the defendant in going to his home.

In the light of these facts, our conclusion is that the plaintiff was not using the railroad track on the evening of his injury as the "invited guest" of the defendant company, but was there as bare licensee.

An action for negligence only lies where there has been a failure to perform some legal duty which the defendant owes to the party injured.

In the case at bar, the evidence shows that the right of way of the defendant company, at the point where the accident occurred, had been for many years in daily use, as a walkway, by persons from "Belle Isle," and that this use and the particular hours of such use were well known to the company and its employees. Under these circumstances it was the duty of the company to use reasonable care to discover and not to injure persons whom it might reasonably expect to be on its tracks at that point. *Blankenship* v. *C. & O. Ry. Co.,* 94 Va. 499, 27 S. E. 20; *C. & O. Ry. Co.* v. *Rogers,* 100 Va. 234, 41, S. E. 732.

In the case of *N. & W. Ry. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846, where the plaintiff was standing on the platform of a freight depot and was injured by a freight train that ran against the platform, this court said: "Being there as a mere licensee, the defendant did not owe him the duty of maintaining its road-bed, switches, and connected appliances in proper condition for running its trains, or of providing and using proper and safe trucks, couplings, and machinery on its cars or of properly inspecting the same; or of employing competent servants to manage its trains, or to run them at a safe and proper rate of speed. The general rule being that a bare licensee, that is, one who is permitted by the passive acquiescence of the railroad company to come upon its depot platform for his own purposes in no way connected with the railroad is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there." Citing 2 *Shear & Red. on Neg.,* sec. 705; *Nichol's Admr.* v. *W. O., &c., R. Co.,* 83 Va. 102, 5 S. E. 171, 5 Am. St. 257; *Gillis* v. *Penn. R. R. Co.,* 59 Penn. St. 129, 98 Am. Dec. 317; *Holland, &c.* v. *Sparks,* 92 Ga. 753, 18 S. E. 990.

In the case of *C. & O. Ry. Co.* v. *Rogers, supra,* a case similar in its facts and circumstances to that under consideration, this court approved an instruction which told the jury, that the defendant company did not owe the plaintiff's intestate the duty of blowing its whistle, ringing its bell, running its engines at

any particular rate of speed, or having a light on said engines or tender; that if they believed from the evidence that the servants of the defendant in charge of the engine could not, in the exercise of reasonable care under the circumstances surrounding them at the time, have known of the danger to the plaintiff's decedent in time to avoid the accident, they must find for the defendant. But that if they believed from the evidence that the servants of the defendant in charge of the engine could, in the exercise of reasonable care under the circumstances surrounding them at the time, by having a proper lookout, have discovered the danger of the plaintiff in time to avoid the accident, they must find for the plaintiff.

The result of these decisions is that a railroad company owes no duty of prevision to a bare licensee. It is under no obligation to make preparation in advance for his protection. Its sole duty is to use reasonable care to discover and not to injure such persons when they may reasonably be expected to be on its tracks at a particular point. As said in *Wood's case, supra,* such a person is only relieved from the responsibility of being a trespasser and takes upon himself all the ordinary risks attached to the place and the business carried on there. The uncontradicted evidence of the engineer in the present case is that he did keep a lookout and did not see the plaintiff, who, he says, must have been walking in the middle of the track, where he could not have seen him on account of a curve in the road at that point; that if the plaintiff had been on the side of the track at the edge of the ties, he could have seen him.

It is earnestly insisted that it was not intended, in the *Rogers case, supra,* to hold that a railroad company was without fault in running a train on a dark night with no light on its engine, thereby depriving itself of the power to keep such reasonable lookout as the law required; that the declaration in the Rogers case meant to charge that the failure to have proper lights on the engine was negligence in itself, without regard to whether or not they were necessary for the maintenance of a reasonable

lookout; that the evidence bears out this view of the pleading, because it there appears that it was a bright moonlight night, and therefore immaterial whether or not there were lights on the engine; that it would be a strange and striking contradiction, if not a curious absurdity, to announce it to be the duty of a railroad company to keep a reasonable lookout and at the same time to hold that it could so envelope itself in darkness as to prevent its performance of such clearly stated duty.

The argument of the learned counsel on this point may be reduced to this proposition: that if it is a bright moonlight night the railroad may run its trains without lights on its engines, but if there is no moon, or the moon is obscured so as to make the night dark, it must, for the protection of bare licensees provide its engines with artificial lights, or be held guilty of a failure to perform a legal duty due to such licensees.

To maintain this view would destroy the established rule that a railroad company is under no duty to make previous preparation for the protection of mere licensees. For if they must provide lights for their protection on a dark night, it could with equal propriety be urged that on a down grade, which it is here contended so reduced the noise of the train as to destroy its value as notice, the company should be required to substitute other noises as notice of its approach. It could with equal force be contended that its machinery and appliances, other than lights, should be in order, that competent employees should be provided, and that the speed of its trains should be so regulated as to provide for the increased danger of a dark night to the licensees. Many things could be done which would add to the facility and safety with which bare licensees might, for their own convenience, use the private property of the railroad, but enough has been said to indicate how difficult, if not impossible, it would be to engraft upon the rule mentioned any exception without ignoring the property rights of the railroad company. There is no contradiction in the rule holding that the defendant company must keep a reasonable lookout to avoid injuring bare

licensees and at the same time providing that it is under no obligation to furnish lights for its engines on a dark night for the protection of such persons. There is no obligation upon the defendant to do anything to make the conditions more favorable than the natural surroundings make them. The obligation is not an absolute one to discover the plaintiff, but it is only the duty of using ordinary care to keep a reasonable lookout under the conditions and circumstances existing at the time the point is reached where the licensee may be reasonably expected. This is shown by the instruction approved in the *Rogers case, supra,* which told the jury that if they believed from the evidence that the servants of the defendant in charge of the engine could not, in the exercise of reasonable care *under the circumstances surrounding them at the time,* have known of the danger to the plaintiff's decedent in time to have avoided the accident, they must find for the defendant.

In the case at bar, the defendant discharged its duty to the plaintiff when it kept such reasonable lookout at the time as its servants could keep under the conditions then existing, among which conditions was an absence of the moon, and no artificial light provided to take its place. The darkness, which it is contended imposed upon the defendant the duty of providing lights for the protection of the plaintiff, also enveloped the latter when he stepped from a place of safety on the pathway to the defendant's track, and should have suggested to him the increased danger of his situation. Having reached the conclusion, however, that the defendant company has failed in the performance of no legal duty that it owed the plaintiff, it is not necessary to consider the negligence of the latter.

For these reasons the judgment complained of must be affirmed.

*Affirmed.*