# Staunton

## CITY OF RADFORD V. ROBERT S. CALHOUN.

September 19, 1935.

Present, All the Justices.

The opinion states the case.

*H. C. Tyler,* for the plaintiff in error.

*Gilmer, Wysor & Gilmer,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Robert S. Calhoun instituted suit against the city of Radford, a municipal corporation, to recover damages for the personal injuries sustained by him, as well as the damage done to his automobile, which, while driven by himself, collided with a pile of concrete curbing slabs extending into the hard surfaced portion of one of the city's streets. The parties will be referred to as they appeared before the court below.

The city denied that it was guilty of negligence which proximately caused the accident and claimed that the collision was due to the negligence of the plaintiff himself. The jury returned a verdict for $500.00 in favor of the plaintiff. On this verdict the lower court entered the judgment which is here for review on a writ of error granted the city.

Norwood street, in the city of Radford, runs approximately east and west, is thirty-eight feet wide from curb to curb, and crosses, by a bridge 266 feet long, a small stream known as Conley's Run. About January 2, 1933, the city began a fill to supplant the bridge and this work was in progress when the accident happened on March 9, 1934.

For some reason which does not clearly appear from the record, the city had torn up a strip of twenty-four feet of the southern curbing of Norwood street at or near its intersection with Grove avenue. This was approximately

127 feet east of the eastern end of the bridge. This curbing, which consisted of a number of concrete slabs, each two feet wide, one foot thick and six feet long, was placed near the intersection of Norwood street and Grove avenue so as to make a pile fourteen or fifteen feet long and three feet wide. This pile of concrete slabs extended sixteen inches into the southern edge of the paved and used portion of Norwood street.

So far as the record discloses, at the time of the accident the filling under the bridge in no way interfered with the maintenance of two-way traffic across the bridge and along Norwood street. The only disturbance to the surface of Norwood street was the removal of this concrete curbing and the piling of it on the side of the street in the manner described.

On the evening of March 9, 1934, at about nine o'clock P. M., the plaintiff was driving a new Chevrolet car eastwardly along Norwood street, which is a part of the Lee highway. He was returning from his home at Belspring, Virginia, to the Virginia Polytechnic Institute, at Blacksburg, Virginia, where he was a student. According to his testimony he had crossed the bridge and was proceeding about twenty miles an hour when he noticed another car meeting him. This car was coming down a slight incline on Norwood street and approaching the eastern end of the bridge. It seemed to be swaying, it's lights were not lowered, and it was near the center of the street. Thinking it best to give the approaching car plenty of room, the plaintiff removed his foot from the accelerator and directed his course further towards his righthand side of the street. Just as the two cars passed, the right front of the plaintiff's car crashed into this pile of concrete curbing. When the plaintiff's car came to a stop all four wheels were on the paved surface of the street and his right front wheel was against one of the concrete slabs.

There was no barrier surrounding this pile of material, nor was there any red light placed thereon. The only warning claimed by the city of the presence of the ob-

struction was contained in two brightly lighted signs, strung across the street, about fourteen feet above the pavement. These signs were erected about thirty days after the work began and more than a year before the accident. They read: "DRIVE WITH CARE, LIMIT 2 TONS, WILL BE ENFORCED, SLOW DOWN 15 MI." One sign was placed directly over the western entrance to the bridge and the wording on it was visible only to an eastbound driver. The other sign was strung across the street just over the pile of concrete slabs, but its wording was visible only to a driver approaching the bridge from the east, and could not be seen by Calhoun as he crossed the bridge going in the opposite direction.

While the plaintiff admitted that in going over the road on former occasions he had observed these signs, he earnestly contends that they related to traffic on the bridge and gave no notice of the presence of this obstruction.

On his previous trips along this route he had not noticed the pile of slabs nor had he paid particular attention to the filling going on under the bridge.

His car was new and adequately equipped with brakes and lights in good order and condition.

While there are several assignments of error the fundamental question in the case is, was the jury justified in finding: (1) That the city was guilty of actionable negligence; and (2) that the plaintiff was free of contributory negligence?

The general principles applicable to cases of this character are well settled.

"The city is not an insurer of the safety of its streets and is required to use only reasonable care to keep them in a reasonably safe condition." *City of Danville* v. *Sallie,* 146 Va. 349, 352, 131 S. E. 788, 789.

"The public is entitled to the full and free use of all the territory embraced within a highway in its full length and breadth, * * *." *City of Richmond* v. *Smith,* 101 Va. 161, 167, 43 S. E. 345, 346; *City of Richmond* v. *Pemberton,*

108 Va. 220, 226, 61 S. E. 787; *Appalachian Power Co.* v. *Wilson,* 142 Va. 468, 473, 129 S. E. 277.

"In cases of temporary necessity a municipality may allow obstructions on the public sidewalks or streets, but the traveling public should be warned of and protected against the same in some proper manner. And for failure to perform its duty the city is liable." *Arthur* v. *Charleston,* 51 W. Va. 132, 41 S. E. 171; *City of Norfolk* v. *Johnakin,* 94 Va. 285, 289, 26 S. E. 830.

What is reasonable care on the part of a city in keeping its streets in a reasonably safe condition, and whether an obstruction renders a street unreasonably unsafe for travel, is a question for the jury under all of the circumstances of the particular case. *City of Richmond* v. *Pemberton,* 108 Va. 220, 227, 61 S. E. 787; *City of Richmond* v. *Rose,* 127 Va. 772, 781, 102 S. E. 561, 105 S. E. 554.

Likewise the sufficiency of the warning of the obstruction—whether a barrier, a red light, or an overhead light, is necessary or sufficient—is a question for the jury. *Wilson* v. *City of Elkins,* 86 W. Va. 379, 103 S. E. 118.

Whether a traveler on a street has exercised reasonable care for his own safety, or was guilty of contributory negligence in a case of this character, is ordinarily a question for the jury, depending upon all of the circumstances of the case. *City of Richmond* v. *Rose,* 127 Va. 772, 790, 102 S. E. 561, 105 S. E. 554.

Testing the case by these principles, we think the evidence is sufficient to support the verdict of the jury.

To say the least, we think the jury had the right to find that this pile of concrete slabs which encroached upon the paved and used portion of Norwood street, a part of one of the principal State highways, was a dangerous obstruction.

Viewing the matter most favorably from the city's standpoint, it was, at least, a question for the jury as to whether the above described signs gave any indication, or adequate or sufficient warning, of the presence of this obstruction.

It will be recalled that the plaintiff was driving eastwardly at the time of the accident. As he reached the western end of the bridge he passed under the sign reading, "DRIVE WITH CARE   LIMIT 2 TONS   WILL BE ENFORCED   SLOW DOWN 15 MI." This sign was 493 feet from the obstruction. While there was a similar sign stretched across the street just above the pile of concrete slabs, its wording was visible only to westbound travelers. It could not be seen by the plaintiff as he crossed the bridge from west to east.

If the signs were intended to warn a traveler of possible obstructions due to work which was under progress east of the bridge, why was it necessary that one of the signs be placed near the eastern entrance to the bridge in such a manner that it could be read only by a driver going in a westwardly direction, after he had passed the construction work? There is no claim that there was any work going on west of the bridge. Why warn a westbound driver, as he approached the bridge, that he was leaving construction work behind?

Furthermore, at each entrance to the bridge, on posts, were other signs reading: "SPEED LIMIT ON BRIDGE 15 MI. POLICE DEPARTMENT." It is admitted that these latter signs were erected at least ten years prior to the accident and related solely to traffic on the bridge.

No doubt the jury thought that all of these signs related to traffic on the bridge because of the filling which was going on underneath. We think they were justified in finding that the signs did not give a traveler adequate, if, indeed, any notice of this obstruction in the street.

But the city argues that regardless of the absence of a red light on the slabs, and regardless of the absence of proper signs warning a traveler of the presence of this obstruction, since the pile of slabs was sufficiently shown by the bright lights from the sign directly above, the plaintiff's failure to see and avoid the obstruction was the proximate cause of the accident, or at least made him guilty of contributory negligence so as to bar his recovery.

The plaintiff admits that he probably would have seen the obstruction had his attention not been momentarily diverted from the street ahead by the actions of the oncoming car.

The jury has said that under the circumstances the plaintiff's failure to see and avoid the obstruction was not contributory negligence on his part. Certainly, we cannot say that they were wrong as a matter of law. The jury evidently tested the conduct of the plaintiff by what they thought an ordinarily prudent person would have done under the circumstances. Here was a driver proceeding along a city street which is a portion of the State highway system. He saw no signs, red lights, barriers, or anything to indicate to him that any part of the street was under construction, or that there might be obstruction in his way. He saw approaching him another car, which was swaying and crowding him. What would a reasonably prudent man have done under these circumstances? Would he have assumed that the street was safe from curb to curb and kept his eyes on the approaching car, or would he have been on the lookout for unmarked encroachments on the streets? Merely to ask this question is to answer it.

As Justice Chinn said in *Jones* v. *Massie*, 158 Va. 121, 128, 163 S. E. 63, 65, "The law is well settled that a person using a street or public way in the ordinary manner has the right, in the absence of knowledge to the contrary, to act on the assumption that the street or way, throughout its entire width, or so much of it as is intended for travel, is in a reasonably safe condition, and he is not required as a matter of law to be on the lookout for defects or obstructions therein." See also, *Osborn* v. *Berglund,* 159 Va. 258, 262, 263, 165 S. E. 410.

In 13 Ruling Case Law, p. 480, sec. 390, it is said: "Generally, the fact that the traveler's attention was diverted from the surface of the way at the moment when he encountered a defect or obstruction therein will not estab-

lish negligence on his part as a matter of law, though he might otherwise have observed it, * * *."

In *Ballengee* v. *Bluefield Telephone Co.,* 104 W. Va. 378, 379, 140 S. E. 333, a driver, whose attention was momentarily diverted in avoiding another car, struck a telephone pole which encroached on the highway and was plainly visible. The contributory negligence of the plaintiff was held to be a question for the jury. There it was said (104 W. Va. 379, 140 S. E. 333, page 334) :

"Whether a traveler on a street or highway exercised reasonable care for his own safety or was guilty of contributory negligence, precluding a recovery of damages for injuries sustained by reason of defects or obstructions in the way, is ordinarily a question for the jury, and becomes a question of law for the court only where the facts are undisputed and but one reasonable inference can be drawn from them. * * * 'Generally, one traversing the streets or sidewalks of a municipality has the right to assume that they are in a reasonably safe condition for travel by day and by night, and though defects therein are plainly to be seen, nevertheless, where one has his attention diverted and for good reason does not see such defects therein and sustains personal injuries therefrom, the question of his contributory negligence is one for the jury, depending on all the facts and circumstances in the case.' *Corbin* v. *City of Huntington,* 81 W. Va. 154, 94 S. E. 38" See also, *McClay* v. *Philadelphia,* 224 Pa. St. 174, 73 Atl. 188.

Nor can we agree with the contention of the city that, in no event, was the obstruction the proximate cause of the accident. To support this argument it cites and relies on *Kegley* v. *Appalachian Electric Power Co.,* 163 Va. 255, 175 S. E. 731, and *Wyatt* v. *Telephone Company,* 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386.

In the *Kegley Case* the plaintiff, while attempting to avoid an on-coming car at a curve, drove off of the paved surface of the road, across a two and one-half foot shoulder, across a ditch, and collided with a pole located

on a bank two and one-half feet high, but on the right-of-way of the State highway. We held that the location of the pole was not the proximate cause of the accident, because an ordinarily prudent person could not' have reasonably anticipated such an accident.

In the *Wyatt Case* the pole, while it encroached on the right-of-way of the highway, was separated from the hard surfaced portion of the road by a similar shoulder and even deeper ditch. That its location was not the proximate cause of the accident was likewise held by this court.

The facts in the present case are quite different. Here the obstruction encroached upon the used portion of the street as defined by the curb lines. We can not say as a matter of law that the jury was wrong in concluding that the obstruction was the proximate cause of the accident.

There is no evidence to support the city's contention that the plaintiff was proceeding at an unlawful rate of speed. The plaintiff testified that as he approached the point where he later found the obstruction to be located, he was proceeding at a speed of from twenty to twenty-five miles per hour. This does not show, as the city claims, that he was exceeding the speed limit *on the bridge*. And even if he were, how could this have been the proximate cause of the collision which took place 127 feet beyond the eastern end of the bridge?

At the trial the defendant, in support of its claim that the plaintiff was guilty of contributory negligence, offered to prove: (1) That for some weeks prior to the accident a great deal of motor vehicle traffic had passed the point at night under similar conditions, and no accident had resulted from the position in which the concrete slabs were placed; (2) That on the same night, immediately before and after the accident and during the whole night, other motor vehicles traveling in an easterly direction had passed the pile of concrete slabs without accident.

The action of the lower court in excluding this evidence is assigned as error. In support of its contention the

defendant cites *Newport News & O. P. Railway & Electric Co.* v. *Bradford,* 100 Va. 231, 40 S. E. 900; *Charlottesville* v. *Stratton's Adm'r,* 102 Va. 95, 45 S. E. 737.

On the general proposition of the admissibility of proof of the absence of other accidents at the scene of the alleged defect, the courts are in hopeless conflict. Such testimony is admitted in some jurisdictions, while in others it is held inadmissible as raising collateral issues. See 13 Ruling Case Law, p. 511, sec. 423; 43 Corpus Juris, p. 1259, sec. 2023; 32 L. R. A. (N. S.) p. 1161, note.

In *Moore* v. *City of Richmond,* 85 Va. 538, 540, 8 S. E. 387, this court held that it was not competent for the plaintiff to prove that on the same night another person fell into a hole in the street, nor was it competent for the defendant to prove that other persons, at other times, when the area was in the same condition, passed the place complained of without injury. Such evidence, it was there said, would lead to the trial of a multitude of distinct and collateral issues.

In *City of Roanoke* v. *Sutherland,* 159 Va. 749, 759, 167 S. E. 243, 246, Justice Browning speaking for the court, commented on the fact that the evidence (apparently admitted without objection) "showed that no accidents of a similar nature had occurred by reason of the defect existing in the sidewalk on the street in question before the one with which we are concerned, * * *."

In *Newport News, etc., Railway & Electric Co.* v. *Bradford,* 100 Va. 231, 40 S. E. 900, and in *Charlottesville* v. *Stratton's Adm'r,* 102 Va. 95, 45 S. E. 737, the plaintiffs were injured while using streets which the defendants claimed were obviously dangerous and unsafe. To rebut this contention the plaintiffs were allowed to prove that other persons were using the streets, and hence they were not so defective as to convict the plaintiffs of contributory negligence as a matter of law. These cases held that the fact that a street in a dangerous condition was used by others in the same manner and about the same time it

was used by the plaintiff, was not conclusive proof that the plaintiff had the right to use it and that by so doing he was free from contributory negligence. But such evidence, it was held, was relevant along with all the facts and circumstances in the case in determining the question of due care on the part of the plaintiff.

It is not necessary for us to here decide whether the principles stated in these cases conflict with those set forth in *Moore* v. *City of Richmond,* 85 Va. 538, 8 S. E. 387, or whether proof of the absence of other accidents at the scene of the alleged defect should be generally admitted or rejected. We have no hesitancy in saying that the evidence sought to be introduced by the city under the circumstances of this case, was not admissible.

The question before the jury was whether the plaintiff, in the exercise of ordinary care, should have seen and observed the obstruction under the peculiar circumstances of this case,—that is, where he had no previous knowledge of the presence of the obstruction, and where his attention was momentarily diverted from the street ahead by the approaching car.

How was it material here that others had safely passed the obstruction? Such other drivers may have been familiar with the encroachment; their driving may not have been complicated by other cars; they may have been exercising more than ordinary care for their safety.

Then, too, the admission of this evidence would have entitled the plaintiff to prove in rebuttal that other drivers had collided, or, perhaps, narrowly averted colliding with this obstruction. Thus the jury would have been confused with the trial of a number of collateral issues.

Furthermore, the plaintiff himself admits that if it had not been for the action of the approaching car, he would probably have seen and avoided the obstruction. Therefore, evidence that other persons had safely passed the obstruction would at the most prove only what the plaintiff himself admits.

We think the trial court was right in excluding as inadmissible this evidence offered by the defendant.

There are other assignments of error dealing with exceptions to various instructions. These, however, involve only the application of the principles herein laid down and need not be discussed.

On the whole, our conclusion is that the judgment of the lower court is right, and should be affirmed.

*Affirmed.*