# CIRCUIT COURT OF THE CITY OF RICHMOND

Ivie Rivers Bryan, Admr.
of the Estate of James Bryan, Jr.

v.

The City of Richmond

October 15, 1984

Case No LH-650

By JUDGE WILLARD I. WALKER

This matter is before the court on the defendant's plea of sovereign immunity in this case. Viewed in the light most favorable to the plaintiff, the essential facts in this case are as follows: The plaintiff, at approximately five o'clock in the morning, was operating his vehicle on Rady Street crossing Magnolia Street in the City of Richmond (City). Due to excessive rainfall during the night, the intersection of Rady and Magnolia Streets was flooded with approximately six to eight feet of water. Unaware of the depth of the standing water, the plaintiff proceeded into the "puddle," which exceeded the height of his automobile, and drowned as a result.

It is alleged that the City had actual notice of this unsafe and hazardous condition and that it knowingly permitted the intersection to remain in an unsafe condition and did not erect any warning sign at that intersection.

The issues presented in this case are twofold:

1. Does the known accumulation of water at an intersection in the City constitute a defect, obstruction or unnecessarily unsafe condition such that the failure of the City to remedy the problem gives rise to a cause of action?

2. If such a cause of action exists, does the alleged negligent maintenance or omission of repair by the City involve the exercise of a governmental function?

I will discuss these questions in inverse order.

## GOVERNMENTAL FUNCTION

The plaintiff, in his motion for judgment, alleges that the City of Richmond was negligent "in the maintenance of its streets and for its failure to not properly arrange that the street would drain properly . . . ." Whether or not the plaintiff has sufficiently pled a cause of action for defect of design is not at issue, as the defendant has not raised such a challenge.

The City's reliance upon the rule of sovereign immunity based upon defective or negligent design is misplaced and not controlling here, since the negligence upon which the plaintiff bases his right of recovery is not negligence in the design of the street or drainage system but negligence in the failure of the City to maintain its streets in a reasonably safe condition after its dangerous condition had been known to the City.

The City contends that there is a temporary obstruction in the roadway which does not alter the nature of the governmental function, and in support of that statement relies upon Fenon v. City of Norfolk, 203 Va. 551 (1962). Fenon, when analyzed, however, stands for the limited proposition that under an emergency situation of such magnitude as brought about by a hurricane, the removal of "temporary obstructions" in the streets of a city, while characteristic of street maintenance, is done for the purpose of pro-

tecting the general public health and safety, and as such the City acts in a governmental capacity.

In deciding Fenon, the Virginia Supreme Court stressed throughout their opinion the particular circumstances upon which it was deciding the case, the emergency situation created by Hurricane Donna. Therefore, its holding should be limited to similar circumstances. To apply the court's holding to a single isolated incident as in the present case would be an incorrect application of the intended law. The court made clear the particular circumstances under which its holding was to be interpreted:

> In the instant case the damage wrought by the hurricane involved the entire City of Norfolk. The City, in the midst of emergency and before there was time for survey and appraisal of the situation, was engaged in removing from its streets the wreckage and debris thrown by the hurricane. The streets were being made reasonably passable in order that electric equipment could get through and service could be restored to the thousands who were without it; so that lights, stoves, refrigerators, water pumps, and sewerage facilities which were dependent upon electricity could again function; so that telephone wires could be repaired and communication restored; so that transportation could again flow. The work was being done for the purpose of protecting the general public health and safety from the damage produced by the hurricane. Fenon v. City of Norfolk, 203 Va. 551, 555, 556 (1962).

The court went on to adhere to their ruling in Ashbury v. Norfolk, 152 Va. 278, 288, 147 S.E. 223, where the removal of garbage by the City was determined to be a public governmental function. In Ashbury, the court quoted with approval from Bolster v. City of Lawrence, 225 Mass. 387, 114 N.E. 722, L.R.A. 1917 B 1285:

The difficulty (in cases of this kind) lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability, if it is not, there may be liability.

There is no element in the present case that parallels the distinguishing features in Fenon and Ashbury and changes to a governmental function the City's ordinary proprietary function of maintaining its streets in a reasonably safe condition.

Additionally, defendant's reliance on Trans, Inc. v. Falls Church, 219 Va. 1004, is misplaced. The Supreme Court's finding of immunity in Trans, Inc. was based upon the premise that traffic signals are for the purpose of regulating traffic; therefore, a city's activity of maintaining traffic signals was governmental in nature, since the purpose of directing traffic is to protect the general public health and safety.

This case is very similar to City of Norfolk v. Hall, 175 Va. 545 (1940). In both cases the negligent failure of a city to maintain its streets in a reasonably safe condition is alleged. In Norfolk v. Hall, supra, plaintiff brought an action for injuries alleged to have been caused by the negligence of a municipal corporation in improperly constructing two drains or depressions across a street and in knowingly permitting the street to remain in an unsafe condition. The Virginia Supreme Court held that the City was liable for the injuries sustained by reason of its failure to keep the streets in a reasonably safe condition, free from defects and obstructions. In so deciding, the court, at p. 551 stated:

The municipality in devising plans and systems for supplying the public with water,

sewerage and the like, exercises legislative duties involving the use of judgment and discretion, and it ought not be held liable to civil actions for defects or want of efficiency of plans, at least during the formative or experimental stage of the enterprise; yet, after the work has been completed, and experience has demonstrated that the system is inadequate and insufficient to meet requirements or to effect the objects for which it was intended, there can be no reason to exempt the municipality from damage suffered by an individual from its continued use.

Although it is not an insurer against accidents on its streets, it has long been well settled in this state that a city has the duty to keep and maintain its streets in repair and in a safe condition for travel, and that it is liable for injuries sustained by reason of its failure to keep them in a reasonably safe condition free from defects and obstructions. Noble v. City of Richmond, 31 Gratt. (72 Va.) 271, 31 Am. Rep. 726; Clarke v. City of Richmond, 83 Va. 355, 5 S.E. 369, 5 Am. St. Rep. 281; Gordon v. City of Richmond, 83 Va. 436, 2 S.E. 727; Moore v. City of Richmond, 85 Va. 538, 8 S.E. 387; City of Portsmouth v. Lee, 112 Va. 419, 71 S.E. 630; City of Radford v. Calhoun, 165 Va. 24, 181 S.E. 345, 100 A.L.R. 1378.

Therefore, it seems clear that the exercise of the City to keep and maintain its streets in repair and in a safe condition does not constitute a governmental function upon which a plea of sovereign immunity is sustainable, and as such, the City should be held liable for its failure to keep the intersection of Rady and Magnolia Streets in a reasonable safe condition.

## DEFECTIVE CONDITION

Defendant's focus on the word "defects," and its claim that there were no defects in the road surface itself, necessarily avoids the distinguishing feature

in this case; namely, the obstruction of the standing water. Certainly, the Virginia Supreme Court has provided guidance in this area by its consistent and deliberate choice of language in numerous opinions, stating that the duty to maintain streets free from defects includes the duty to maintain streets free from obstructions. To overlook the court's choice of language would result in the misapplication of the law.

For the reasons stated, the City's immunity plea is denied.