# Richmond

## D. M. Jones v. P. M. Massie.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Browning and Chinn, JJ.

The opinion states the case.

*Sinnott, May & Leaman,* for the plaintiff in error.

*Fred Harper* and *Thos. J. O'Brien,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This action was brought by P. M. Massie, the defendant in error, against D. M. Jones, the plaintiff in error, to recover damages for personal injuries sustained by Massie while

riding as a guest in an automobile owned and operated by Jones. There was a verdict and judgment in favor of the plaintiff below for the sum of $8,500.00 to which Jones obtained this writ of error.

It is alleged in the petition that the trial court erred: (1) In denying the motion of the defendant below to strike out all the evidence, and (2) in refusing to set aside the verdict and enter final judgment for the defendant. Both of these assignments are based upon the ground that there was no evidence of primary negligence on the part of the defendant, and, therefore, present the same question for the consideration of this court.

The evidence is without material conflict. Both parties live in Lynchburg, whence they had driven in Mr. Jones' car on a week-end trip to Virginia Beach. On the day the accident occurred, accompanied by two young ladies, Miss Lutz and Miss Clark, the parties motored in Mr. Jones' car from Virginia Beach to Ocean View, and on leaving there, decided to return to Virginia Beach by way of Norfolk. Miss Lutz and Mr. Massie were riding in the rear seat of the car, and Miss Clark was in the front seat beside Mr. Jones, who was doing the driving. On arriving in Norfolk, all of the party being strangers in the city and not knowing how to get back to Virginia Beach, they finally found themselves on Chapel street, where they stopped and made inquiries. They were told to turn at a specified corner and drive back on Chapel street, and turn to the left when they reached Princess Anne road, which would take them directly to Virginia Beach. Following these directions Mr. Jones drove along Chapel street in a northerly direction until he came to Henry street, which intersects Chapel street at right angles. Chapel street, including the intersection, is paved with concrete and is thirty-two feet wide. Henry street is twenty-six feet wide, and running down the center is a single-track unused street railway line. With

the exception of a few slight irregularities, the rails are laid on a level with the street. Between the rails is paved with red brick. On each side of Henry street, and crossing Chapel street, is a "flat gutter," or depression in the pavement, placed there by the city to take off the drainage from that area. In crossing Henry street from Chapel street in either direction, the depression slopes gradually toward the railway track for a distance of twelve feet to a maximum depth of three inches below the level of Chapel street, or one-fourth of an inch to the foot. The grade then gradually rises at the rate of three-fourths of an inch to the foot, for a distance of thirteen feet, to the center of the railway track. In passing over the intersection above described, Mr. Massie was thrown against the top and other parts of the car causing him to receive a scalp wound about three inches long, also a compression fracture of one of his vertebrae, and other minor injuries. Miss Lutz was also thrown against the top of the car, sustaining a cut in her scalp. Neither Mr. Jones nor Miss Clark was hurt, although Mr. Jones says he "got an awful rebound."

All those who were in the car testified at the trial except Miss Clark, who was out of the State, and these witnesses furnish all the evidence as to the actual occurrence. None of them could say definitely at what point in the crossing the rebound of the car occurred. All agree, however, that as he approached the intersection of Henry street, Mr. Jones was driving at "a reasonably good rate of speed"— about twenty-five miles an hour. None of the witnesses observed the depression or any unusual condition in the street until the car had passed over the intersection and Mr. Jones had brought it to a stop, though Mr. Massie says he thought he "picked up a vision" of the car track, "possibly not until we got on top of it." The evidence is somewhat in conflict as to the distance from which the physical conditions existing at the intersection can be seen by one driv-

ing an automobile north on Chapel street, but it may be said the evidence shows, that Mr. Jones could have seen the conditions at a sufficient distance to have permitted him to either stop or check the speed of his car before entering the intersection, and if he had done so the accident would not have occurred.

It is conceded by counsel for defendant in error in their brief that, "there was no negligence of the driver so far as the speed of the car is concerned until the peculiar conditions were approached," but it is contended that Mr. Jones' failure to observe the conditions in time to avoid the accident, as he might have done, constituted such negligence on his part as to render him liable for Mr. Massie's injuries.

■ In the case of *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77, 80, recently decided by this court, Judge Holt said: "In *Massaletti* v.. *Fitzroy, supra* (228 Mass. 487, 118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088), the court said that, apart from all authority, 'justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing.'

"With this we are in cordial accord, and it is of small moment whether we hold that 'gross negligence' was necessary or that small care was due.

■ "To hold that a guest who, for his own pleasure, is driving with his host may recover from him for injuries suffered where there is no culpable negligence, shocks one's sense of justice. The driver is often not an expert and makes no implied representations beyond these, namely, that he

will not knowingly or wantonly add to those perils which may ordinarily be expected and that there are no known defects in the car which make its operation particularly hazardous. Moreover, he should disclose to his guest any other peril not patent. Beyond this all risks are assumed. While automobiles in themselves may not be dangerous instrumentalities, yet their use carries with them dangers that cannot be forgotten."

The question presented by the assignments of error now being considered, therefore, is whether Mr. Jones was guilty of culpable negligence in failing to see the conditions at the crossing in time to avoid the injury, under the facts and circumstances of this case; or, to state it synonymously, whether he knowingly or wantonly added to the risks which might have been ordinarily expected under the circumstances, and which Mr. Massie, as his guest, assumed.

Mr. Massie testified that while they were proceeding along Chapel street after they received their directions as to how to get back to Virginia Beach, he paid no attention to the speed of the car, or noticed whether Mr. Jones was observing the street ahead, looking for the turn, or what he was doing in reference to the operation of the car; that he was not looking for the turn himself, and did not notice any unevenness in the surface of the street—in fact, was not observing anything, but abandoned his safety entirely to the driver.

Miss Lutz testified that she, herself, was on the lookout for the turn into the Virginia Beach road, and was under the impression at the time that Mr. Jones and the other occupants of the car were also looking for it; that no one warned Mr. Jones about anything, or made any protest whatever as to the manner in which the car was being driven.

The substance of Mr. Jones' own testimony is that as he approached the intersection of Chapel and Henry streets, the general direction of his vision was straight ahead;

that he was looking for the turn at Princess Anne road, as he had been directed, but also had the general surface of the street in view, and "the surface of the street was apparently all right;" that he observed the intersection ahead of him, but saw nothing which attracted his attention except that there was traffic passing in both directions—east and west—on Henry street; that he did not see the conditions existing at the crossing until he "got right on it," and did not apply his brakes to check the speed of his car, as he would have done if he had seen the depression in time.

■ There is no conflict with the evidence given by Mr. Jones as above stated, and the same not being incredible on its face, he is entitled to the benefit of his testimony, even though the question involved must be considered as upon a demurrer to the evidence.

"The demurrant does not give up his parol evidence which is not in conflict with that of the demurree. He may supply gaps and fill in deficiencies in the evidence of the demurree, and show other independent affirmative facts provided only they do not conflict, directly or indirectly, with the evidence demurred to. Furthermore, in drawing inferences favorable to the demurree, the court can draw only such inferences as the jury might have *fairly* drawn from the evidence." *Farmer's Adm'x* v. *C. & O. Ry. Co.*, 144 Va. 65, 131 S. E. 334, 342.

It was also testified by a witness for the plaintiff below that Chapel street is a much traveled street, especially by trucks. It therefore appears that in approaching the crossing in question, as the driver of the car, Mr. Jones' attention was necessarily engaged not only in looking for the turn at Princess Anne road, but also in keeping a lookout for passing traffic on Chapel street and the cross-traffic on Henry street. Moreover, being a stranger in Norfolk, he had no previous knowledge or warning of the unusual and extraordinary physical conditions at the intersection and, there-

fore, had no reason to be on the lookout for such defects. On the other hand he had the right to assume that the street was in an ordinarily safe condition, and the speed at which he was driving did not seem unreasonable to the plaintiff.

The law is well settled that a person using a street or public way in the ordinary manner has the right, in the absence of knowledge to the contrary, to act on the assumption that the street or way, throughout its entire width, or so much of it as is intended for travel, is in a reasonably safe condition, and he is not required as a matter of law to be on the lookout for defects or obstructions therein. *City of Richmond* v. *Courtney*, 32 Gratt. (73 Va.) 792; 43 C. J. 1078; *Bedford City* v. *Sitwell*, 110 Va. 296, 65 S. E. 471; *City of Richmond* v. *Rose*, 127 Va. 772, 102 S. E. 561, 105 S. E. 554.

Viewing the facts and circumstances in the light of the established rules of law on the subject, we feel compelled to hold that, as a matter of law, Mr. Jones cannot be held guilty of that degree of negligence which renders him pecuniarily liable for the unfortunate accident sustained by Mr. Massie on the occasion in question. There is no evidence to indicate that in failing to see the conditions at the crossing in time to avoid the injury, he "knowlingly or wantonly" added to the risks which Mr. Massie, as his guest, had assumed.

In view of the conclusions expressed it is unnecessary to consider the other errors assigned. The judgment of the court below will, therefore, be reversed and final judgment entered here for the plaintiff in error.

*Reversed.*