# Staunton

## GLEN OSBORN v. MARTIN BERGLUND.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*J. S. Ashworth,* for the plaintiff in error.

*L. R. Hall* and *Curtin & Haynes,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This is an action by notice of motion brought by Glen Osborn, an infant, by his next friend, Marie A. Osborn, to recover damages for personal injuries alleged to have been suffered in consequence of the negligence of the defendants, Martin Berglund and L. K. Dillinger.

The salient allegations of the notice of motion are that the plaintiff, by the express invitation of the defendant, was riding in an automobile which was then and there in the control of and being driven by the defendant, Berglund; that the automobile was so negligently and carelessly driven as to bring it into collision with an automobile driven by one L. K. Dillinger; that the severe injuries sustained by the plaintiff were the result of the negligence and carelessness of defendants jointly and severally, each of said defendants having been negligently driving at the time of the accident at a greater rate of speed than was safe under the

road conditions then existing, and that the defendants carelessly and negligently permitted their respective automobiles to slip or skid to the left so as to bring them into a head-on collision.

The defendant, Dillinger, filed a plea in abatement, which was conceded by plaintiff to be a good plea, and the action as to him was dismissed.

Berglund thereupon filed a plea in writing of the general issue and also his grounds of defense. Though a bill of particulars was required of the plaintiff, the record fails to disclose that it was filed, and the trial was had before a jury upon the notice of motion, the plea of the general issue and the grounds of defense.

At the conclusion of plaintiff's evidence defendant made a motion to strike, which motion the court overruled. Thereupon, the defendant was introduced as a witness and testified as the only eye-witness to the accident. The trial resulted in a verdict in favor of the defendant.

The assignments of error challenge the action of the court in refusing certain instructions requested by the plaintiff, in giving certain instructions requested by the defendant, and in refusing to set aside the verdict and award plaintiff a new trial on the ground that the verdict was contrary to the evidence, and on the further ground that counsel for defendant (who by clear inference represented an insurance carrier), in the conduct of the defense, "left the impression on the jury that there was probably liability insurance in the background, and that the defendant * * * was probably colluding with the plaintiff to unjustly allow a judgment against himself * * *."

The instructions requested by the plaintiff advanced the theory that, due to the tender years of the plaintiff, the defendant owed to him a higher degree of care than ordinary care; that the undertaking of the defendant to transport plaintiff was not, under the evidence, a gratuitous one. The trial court, however, was of opinion that the question of whether the undertaking of the defendant to transport

plaintiff was a gratuitous undertaking or not was a question of fact to be determined by the jury, and in the event the jury found the undertaking to be gratuitous, then the burden was upon the plaintiff to prove by a preponderance of the evidence that the defendant was guilty of gross negligence, and that the accident resulted proximately therefrom.

In view of our conclusion to affirm the judgment of the trial court, for the reason that no actionable negligence upon the part of the defendant has been shown by the plaintiff, it is entirely unnecessary to enter upon a discussion of the question of whether or not the undertaking was a gratuitous one; nor is it necessary to determine the legal status of an infant seven years of age who has, by and with the consent of the parent, been entrusted to the care and custody of another.

It is displayed by the record that the defendant is an intimate friend and schoolmate of Maver Osborn, an elder brother of the plaintiff. For several weeks prior to the accident defendant had been the guest of the Osborns at their summer cottage near Bristol, Tennessee. The Osborns were residents of Connecticut, as was also the defendant, and on the day of the accident were on their way to their home in the north. Mrs. Osborn and Maver occupied a Lincoln car. The plaintiff requested that he be permitted to ride with defendant, who was alone in a Ford car, and the request was granted by the mother. The trip was being made over the Lee highway, through the Shenandoah valley, with the Lincoln car in front. As the parties approached the town of Strasburg, three other cars going in the same direction had gotten between the Lincoln and the Ford. It was raining and the road was so narrow as to afford only sufficient space for cars to pass.

It is true that Fred Osborn, the father of plaintiff, testified that defendant stated to him that the accident resulted from the negligent act of defendant in trying to pass the cars between him and the Lincoln. However, when we

consider the evidence of the defendant, his demeanor on the stand, his bias and his professed willingness that a verdict be rendered against him, we are forced to the conclusion that his alleged confession of negligence is not borne out by the proof adduced.

In the absence of the jury a most illuminating colloquy took place between the defendant and the court. In response to the query, "Do you want to let a judgment go down against you in favor of this child?," defendant responded, "I thought I was insured by Mr. Osborn's policy, * * * I would like to see the people reimbursed for the expense they have been put to for my negligence." To this the court responded: "Of course you are twenty-one and if you want to confess judgment in favor of this child you have a right to do that, but the court don't want to be a tool to collect insurance from an insurance company by fraudulent or any other sort of relation."

With the exception of the alleged confession of negligence, it plainly appears that the defendant, while running at a speed of approximately twenty miles an hour, "nosed out" to the left of the car twenty-five or thirty feet in front of him "to see if another car was coming." At a point when his vision was unobstructed he saw the Dillinger car approaching at a distance of fifty or sixty yards. He then immediately attempted to get back into the line of travel, his car hit an unseen mound or defect in the road, started sliding, and eventually collided with the Dillinger car. But for the defect in the road which caused the defendant's car to skid, it is apparent that he had ample time and space to resume his position in the rear of the car immediately in front of him. The use of the road by the defendant was in keeping with the law of the road. On account of the hard rain he was proceeding at a moderate rate of speed, to-wit, twenty miles per hour. He was not crowding the car in front of him. He was in the exercise of due care when he "nosed" his car to the left to observe whether there was an approaching car. In the absence of

knowledge to the contrary he had the right to assume that the highway was in a reasonably safe condition for travel, and the law imposed upon him no duty to be on the lookout for defects. *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63.

Under the facts and circumstances detailed, the court would have been warranted in sustaining the motion to strike, and therefore the jury were justified in finding that the defendant was not guilty of actionable negligence, and that the accident was caused by the defect in the highway.

The most that can be said of the case is that an unfortunate accident has occurred, for which there is no legal liability.

*Affirmed.*