## Staunton

UNIVERSAL TRACTOR AND EQUIPMENT COMPANY, INC., v. TYLER BOLLING.

September 21, 1933.

Present, Campbell, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Sinnott & May,* for the plaintiff in error.

*Robert C. Lyne* and *Willis D. Miller,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grows out of an accident which happened in Henrico county about one o'clock P. M. on the 10th day of September, 1931.

The Universal Tractor and Equipment Co., Inc., was engaged to demonstrate one of its tractors to Jake Hayes, a prospective purchaser, at the latter's farm. The company's agent, Fowler, conveyed the tractor in a truck and when they arrived at Hayes' place it was found to be impractical to have the demonstration there and they decided to proceed to a farm about a mile distant for the purpose. Tyler Bolling and his son, Woodson, happened to be at Hayes' at that time. Tyler was about to start walking back to his home when he was invited by Hayes and Fowler to ride in the truck and they would take him home after the tractor was unloaded. He was asked to get in the cab of the truck, but Hayes, Fowler and Woodson Bolling were already in the cab, which made it crowded, and Tyler got in the back and sat with his feet hanging out at the rear. He did not know the exact point of the unloading nor did the others, but they all knew it was a necessary step in the operation and would be effected at some suitable place. They proceeded along a narrow road and when they had reached the place or farm of Hayes' brother-in-law, where the evidence tends

to show that Hayes at first thought of having the demonstration, and which was opposite his mother's farm, they concluded that they would go further on and unload the tractor on the latter land where there was an embankment convenient for the purpose. Fowler was driving the truck on the right-hand side of the road. He pulled to the left, then put his truck in what is called neutral and then in reverse and backed obliquely or in a bias line to the embankment. The execution of this movement, according to the plaintiff's evidence, required from two to four minutes. The customary grating noises of the motor and gear machinery were heard by Tyler and this is his account of the matter:

"Q. But when he put the car in neutral and then in reverse and started to cut toward the bank. How long did it take him?

"A. He cut toward the bank and it wasn't three minutes.

"Q. About how long was it?

"A. I don't know.

"Q. Can't you give us some idea how long it was?

"A. I don't know.

"Q. You think it was about three minutes?

"A. I think so.

"Q. You saw that he was coming back, didn't you?

"A. When he started back I tried to pull this leg (indicating his left leg) up. I got this one (the right) up and before I could get this one up it was back against the bank and the vines had it. I was hollowing then, but couldn't get it out of the vines.

"Q. When you saw he was backing, you saw the bank, didn't you?

"A. Yes, sir.

"Q. Why couldn't you take your foot up out of the way?

"A. I wasn't fast enough.

"Q. It took some time, didn't it?

"A. Not three minutes. It didn't take him three minutes to come back from where that wheel was—the right-hand wheel was about the length of this stick from the

bank (indicating the cane). I made one or two turns trying to get up out of the way. I got this (right) foot out, but couldn't get the other one out in time."

The testimony of Woodson Bolling, the son, as to the time consumed by the movements of the truck was as follows:

"Q. Give us some idea about the time it took him to pull up there and change gears and come back?

"A. Round three or four minutes.

"Q. Did he ever come to a stop?

"A. He slowed long enough to get it in reverse.

"Q. And you say it took him three or four minutes to do these things?

"A. Yes, sir."

Tyler Bolling's leg or ankle was injured quite severely by being caught between the rear part of the truck and the embankment. The jury's verdict was in his favor for $600.00 damages, which the trial court refused to disturb, but entered judgment against the defendant for that amount.

The contention of the defendant is that it was not guilty of any primary negligence; that it was observant of all the duties to the plaintiff imposed upon it by law. On the other hand, the plaintiff urges that the driver of defendant's truck was guilty of primary, culpable negligence and recklessness in backing the truck into the embankment without giving a timely warning and without first looking to see that such movement could be made in safety to the occupants.

We do not think that the plaintiff's contention is justified by the evidence. Tyler Bolling knew perfectly well that the purpose of the trip up the road was to demonstrate the tractor; he knew just as well that it could not be demonstrated without being unloaded; he knew that it was to be unloaded nearby. He was conscious of the various movements of the truck which were made and which were necessary to place its rear end at the embankment for the purpose of unloading.

This is manifest because he testified that he got his right foot out but couldn't get the other one out in time. The evidence also shows that the operation of the truck was not quick or fast or sudden, but it required from two to four minutes for its execution.

Fowler, the driver, testified as follows:

"Q. What signal did you give the old man?

"A. I called from the front of the cab, 'coming back.'

"Q. You hollowed?

"A. Yes.

"Q. You didn't look back?

"A. I could see from the rear vision mirror that everything was all right. I couldn't see the old man.

"Q. You came on back not knowing where the old man was?

"A. I didn't know where he was.

"Q. You didn't know whether he was standing on the bank or not?

"A. No, I didn't know whether he had jumped off or whether he was in the truck."

It is true Bolling denied that Fowler had said that he was coming back, but it is patent that the strength of his refutation was simply that he did not hear the signalling words of the driver.

Tyler Bolling was sixty-three years old, not an old man, as we are pleased to venture. There is no evidence that any of his faculties, mental or physical, were impaired. If the several movements made by the truck, the accompanying noises, the reverse direction of its movement all fell upon deaf senses, then we are at a loss to know what signalling could have been availing to awaken him to the realization that it would have been advisable for him to get out of a position which might cause him injury. In view of his testimony that he got one foot up and could not get the other one out of danger in time to avoid injury, or that he was not fast enough or quick enough to negotiate this member, it is interesting to note that he said that

he did get his leg out after it had been injured by the truck's impact with the embankment twice.

Bolling, sitting on the back of the truck as he was, knew, or ought to have known, the conditions present, and, under the circumstances, what the driver was in the act of doing and he should have gotten out of the way of danger and, we think, the driver had a right, under the circumstances, to assume that he would do so. Bolling was really in a position to better know the conditions than was the driver, or any other occupant of the truck.

The cases of *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, and *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63, are cited in the briefs. They deal with the question of the measure of duty due to a guest by the owner or operator of a motor vehicle. In our view of the case it is unnecessary to discuss them for the reason that no primary negligence has been proven against the defendant.

The judgment of the trial court is reversed, and judgment will be entered for the defendant.

*Reversed.*