# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

### LOTTIE LAWSON MARGIOTTA, ET ALS. V. HARRY T. AYCOCK, ADM'R, ETC.

June 14, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*S. Burnell Bragg,* for the plaintiffs in error.

*B. A. Banks* and *Kelsey & Jett,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In this case the plaintiff below has recovered a verdict and judgment. His decedent was killed in an automobile accident.

On the night of July 11, 1931, Lottie Lawson Margiotta and Frank J. Margiotta, a young married couple from Norfolk, attended a dance at Virginia Beach. They left for home sometime after twelve o'clock, taking with them as passengers and guests a young girl, Mildred Aycock, and her friend, Bernard Capps. The car in which they rode, a Ford coupe with a rumble seat, was owned by the wife and driven by the husband. These guests sat in the rumble seat. Miss Aycock sat on the left and her escort on the right. The body of this car was enclosed and these guests when seated could not see ahead nor could they carry on any conversation with their hosts. The return was made along what is known as the Laskin road. That road has a cement pavement eighteen feet wide with five foot dirt shoulders. As they drove toward Norfolk they came upon several cars standing in the roadway and on their left side. At the end of that line of cars they ran into a Nash sedan driven by a colored man, Colonel Lee. Its right front wheel and front axle were badly mashed and its chassis was bent back against the motor. Miss Aycock was hurt. Her injuries were not at that time thought to be particularly serious, but she was taken to a hospital and died soon afterward from their effects. These facts are nowhere questioned.

There have been four trials. The first resulted in a verdict for the plaintiff in the sum of $7,500, which was set aside. The reasons controlling the court do not appear in its order, but in the same order a guardian *ad litem* was appointed for the defendants. They were not then of age and it is fair to assume that the failure to thereto-

fore appoint such a guardian was the real reason. Each of the next two trials resulted in a hung jury. At the fourth the plaintiff recovered a verdict for $7,850, which the court confirmed.

This court, in considering the sufficiency of the evidence, is primarily concerned only with that which tends to support the verdict—a rule which counsel for plaintiffs in error, in discussions, sometimes finds it hard to remember.

At the first trial Colonel Lee was also a defendant, but the jury found him not guilty and so he is no longer a party to this litigation.

Lee, in substance, stated that he was driving towards Virginia Beach and saw a car ahead apparently moving slowly. He checked his speed and followed. This car ahead, driven by Jessie Smith, then made a sudden stop. He, to avoid a collision, undertook to turn to his left when his right front bumper struck that car's rear left bumper a glancing blow. No material damage was done. He looked down the road which was straight for a quarter of a mile and saw no car coming, moved his over, came to a stop about five feet from the edge of the cement pavement and was in the act of getting out to investigate when the Margiotta car ran into him. The two collisions were about a half a minute apart. His lights were burning and continued to burn and there was ample room for a car to pass to his left provided it used a part of the five foot dirt shoulder.

Willie Daniel, another colored man, drove a car in this procession. They were returning from a party in Norfolk. He was in the rear but pulled out to pass the cars ahead. As he reached the head of the line and was passing the last car he heard the sound of the first collision. No other car was then in sight, but one came into view about the time he came to a standstill. This approaching car came around a bend about 150 feet away. It was moving rapidly and seemed to be going about forty or forty-

five miles an hour. Just after it passed he heard a woman scream and then heard a crash.

Jessie Smith, a colored school teacher, and a member of the party, said that she had been driving twenty-five or thirty miles an hour but that the cars ahead of her slowed down. She then checked her speed also and was struck on her left rear bumper by a car following, about the time she had come to a complete stop. She then suggested to her companion that it might be well for her to get out and see what had happened. He said that it was not worth while, but she insisted, cut off her motor and got out. As she stepped from the left side of her car she looked ahead and saw nothing coming. She was facing her car as she stood in the road and so did not see the defendants' car pass. but she heard a scream and almost at the same time the noise of a collision.

William Hatchett was of the party and drove the third car, a Hudson sedan, and was two cars ahead of the Jessie Smith car. The Daniel car was just ahead of him. He said that it had gotten clear of the road before Lee's car struck the Smith car, that is to say, the passing movement had been completed and Daniel was at the head of the procession. As Daniel was passing him he could see no car approaching. Immediately afterward a car did pass him going, according to his estimate, forty-five or fifty miles an hour. There was a woman's scream and a crash. He heard tires grip the pavement as if brakes were suddenly applied.

Bernard Capps is a clerk in the Seaboard Citizens Bank. He describes the Ford coupe and the manner in which its occupants were seated. He tells us that one could not see ahead while sitting in the rumble seat, but it was possible to stand up and look through the glass of the rear window. When some distance up the road he heard a bump and then he heard Mrs. Margiotta scream. He stood up, looked through the glass window and saw what appeared to be a car parked in the road with lights burning and about seventy feet away; that there was no checking

of the speed of the car in which the witness rode. He said that Mr. Margiotta could have avoided the accident either by stopping his car or by going around the Lee car and traveling partly on the concrete and partly on the dirt shoulder.

Mr. Hanes was also returning to Norfolk along this road and passed the Margiotta car about a mile and a half from the point of collision. He himself was driving between forty-five and fifty miles an hour. Just after he passed the column of cars he heard a bump. He was interested and wanted to see what had happened and after he had gone about 100 yards stopped and began to turn around when he heard the second crash.

When within about 225 feet from the head of the column Mr. Margiotta said to his wife that there seemed to be trouble down the road.

We do not mean to say that this is a statement of all the evidence, but it is a statement of those facts upon which the jury might with propriety have rested its verdict.

The defendants claim that they proceeded slowly and with caution down this line of cars, but that as they reached its end the Lee car suddenly shot out from behind it at a time when collision was unavoidable. That this conflict in evidence was serious is made manifest by the fact that two juries hung but the jury whose verdict is in judgment did agree and has confirmed the finding of the first.

■ Plaintiff's decedent was a guest and proof of gross negligence is necessary. *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, 80; *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63; *Osborn* v. *Berglund,* 159 Va. 258, 165 S. E. 410; *Collins* v. *Robinson,* 160 Va. 520, 169 S. E. 609; *Young* v. *Dyer,* 161 Va. 434, 170 S. E. 737; *White* v. *Gregory,* 161 Va. 414, 170 S. E. 739.

■ In *Boggs* v. *Plybon, supra,* this court said: "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have

a relative significance and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court."

Of course the jury's verdict is not always conclusive. In cases of ordinary negligence this court has always freely exercised its right to say that it is unsupported by the evidence. By the same token it has the right to say, notwithstanding the verdict, that there is no evidence whatever of gross negligence. *Jones* v. *Massie, supra; Young* v. *Dyer, supra;* and *White* v. *Gregory, supra.* No such question, however, arises here. If we accept as true the evidence for the defendants, they are guilty of no negligence at all. If plaintiff's witnesses are to be believed, they are guilty of the grossest negligence.

The Lee car, with lights burning, stood in plain view on a straight road. Mr. Margiotta when 225 feet from the head of the column of parked cars recognized the fact that there was some trouble down the road, yet he drove rapidly and with undiminished speed into this car which he must necessarily have seen had he looked, nor did he undertake to apply his brakes until immediately upon it. He had ample time to stop, and he had ample time in which to drive around it. Indeed, much of the strength of the defendants' case rests in the fact that the negligence charged is unbelievably gross.

It is true that they claim that plaintiff's witnesses out of court and in the preceding trials had made statements materially different from those made in the present trial. This is an argument which might with compelling force have been addressed to the jury. It doubtless was, but it can seldom avail on appeal. If all that is claimed be conceded, it still could not change results, for the issue was the truth of those made here and not elsewhere. A jury has the right to believe the testimony of a confessed perjurer though it should weigh his state-

ments with great caution. The approval of the verdict by the trial judge adds weight to the verdict. *Kelly* v. *Trehy*, 133 Va. 160, 112 S. E. 757; *Equitable Life Assur. Soc.* v. *Kitts*, 109 Va. 105, 63 S. E. 455, and *Parsons* v. *Parker*, 160 Va. 810, 170 S. E. 1, opinion by Campbell, C. J.

It is next said that the jury was actuated by prejudice, partiality and sympathy. This claim is not supported by the record.

In *Farris* v. *N. & W. Ry. Co.*, 141 Va. 622, 126 S. E. 673, 674, Judge McLemore said: "We are fully conscious of the fact that cases are constantly arising where juries, as they visualize the misfortunes that have come to litigants, and have these exaggerated by the appeals of astute counsel—are (unconsciously, though innocently) misled into awarding damages not according to the law and the evidence but rather because of the adversities that have overtaken the plaintiff, coupled with the ability of the defendant to pay. This is one of the weaknesses of the jury system from which there would seem to be no immediate relief."

He also said: "It is entirely correct to say that much evidence was introduced tending strongly to prove a different state of facts, and if accepted by the jury would have sustained a different verdict from that rendered, but the weight to be given the evidence under such circumstances is for the jury to determine, within well established limitations."

If we were to speculate as to where sympathy rested we might well reach the conclusion that it rested with these young defendants, who, if unprotected by insurance, must stagger under a heavy verdict.

It is contended that there was collusion between the plaintiff and his witness. We content ourselves with saying that this has not been shown.

Reliance is placed upon this affidavit of a juryman, H. R. Diehl, tendered in support of a new trial: "I talked to no one outside of the jury. Some member of the jury, in the jury room, stated during the first day of

the trial that this was the fourth time the case had been tried; that there were two hung juries; that there had been a verdict of seven thousand, five hundred dollars ($7,500) in one of the trials and the judge had set it aside, and that this was an insurance company case, and that the negro had been exonerated in one of these trials.

"I made the remark in the jury box and also in the jury room that it looks like they are trying the wrong man, and one of the jurors stated that the colored man had been exonerated."

There was also tendered this affidavit by G. F. Cox: "On the morning of October 28th, while the said case was being tried, I went to the home of Mr. H. R. Diehl, at 717 W. 35th street, Norfolk, Virginia, to see Mr. Diehl on some business, and not finding him at home, his wife told me that he was on the jury trying the above case and that he was very much worried about this case. She said that he had told her that the case had been tried before; that there had been two hung juries; that there had been a verdict of $7,500 and that the trial judge had set it aside and that the negro, the co-defendant in the case, had been exonerated in one of these trials; and she further said that he had gone down town early that morning.

"On Saturday, October 29th, Mr. Bragg, one of the attorneys in the case, saw me in the law building and asked me if I knew Mr. Diehl and I told him that I did and also told him of the conversation which I had with his wife on Friday morning, October 28th, at her home. That night Mr. Bragg came to my home and I went with him to Mr. Diehl's home and Mr. Diehl, in the presence of Mr. Bragg and myself, confirmed the above statements made by his wife to me on the previous day, October 28th, and stated to Mr. Bragg and myself that this information had gotten to the jury on the first day of the trial, October 27th."

In a counter-affidavit filed by D. P. Connor, foreman, is this statement: "The only reference I remember as to insurance was that one of the jurors, I think Mr. Diehl,

stated substantially as follows: 'This is a terrible verdict against these youngsters if they had no insurance.' Thereupon one of the jurors, I think Mr. Nash, replied substantially as follows: 'that is their hard luck.' I did not know whether or not either of the defendants had insurance on the car and it would have made no difference to me if I had known they had, as I was seeking to determine liability, if any."

Each other member of the jury made an affidavit to the same effect.

In *Price's Ex'r* v. *Warren, Adm'r*, 1 Hen. & M. (11 Va.) 385 appears this headnote supported by the text: "A new trial ought not to be granted on the affidavits of two of the jurors that they were influenced in their verdict by information given by one of their own body in the jury room."

In *Culpepper* v. *Robie*, 155 Va. 64, 154 S. E. 687, 697, Judge Hudgins said: "It has long been settled in Virginia that the affidavits or the testimony of jurors to impeach their own verdicts are to be received with great caution and only in exceptional cases and in order to prevent a failure of justice. *Litz* v. *Harman*, 151 Va. 363, 144 S. E. 477; *Bryan* v. *Commonwealth*, 131 Va. 709, 109 S. E. 477; *Washington Luna Park Co.* v. *Goodrich*, 110 Va. 692, 66 S. E. 977; *Manor* v. *Hindman*, 123 Va. 767, 97 S. E. 332; *Bull's Case*, 14 Gratt. (55 Va.) 613. The reason for the rule is that otherwise there would be held out to unsuccessful litigants and their friends, the strongest temptation to tamper with jurors after their decision and might be productive of great evil."

It is necessary to add nothing to this statement. If gossip of jurymen among themselves, or surmise, is to be the basis of new trials there would be no end to litigation. The preceding trials of this case were a matter of public record, and six jurymen tell us that no one said "this is an insurance company case." Lee's name appeared upon the original motion for judgment. He had been exon-

erated and the court very properly told the jury that he was no longer a defendant.

Sundry exceptions are taken to instructions but none of them are well taken. This is plaintiff's instruction 4: "The court instructs the jury that if they believe from the evidence that the injuries causing the death of plaintiff's decedent were the result of the concurring negligence of the driver of the Lee car and the culpable negligence of the driver of the Margiotta car, then the plaintiff is entitled to recover in this case."

It is said that it failed to tell the jury of what degree of negligence Margiotta must be found guilty before he can be held liable. It tells the jury that he must have been guilty of culpable negligence and that is enough.

This is instruction 6 given for the plaintiff: "The court instructs the jury that the law looks to the proximate cause without which notwithstanding all other causes the occurrence would not have taken place and holds liable him whose negligence is the proximate cause of the accident. Therefore, even if the jury believe from the evidence that the driver of the Lee automobile was guilty of some prior negligence creating imminent danger, but further believe from the evidence that the defendant Margiotta saw, or in the exercise of reasonable care could have seen the danger in time thereafter and had sufficient space to avoid the accident and failed to do so, and such failure was culpable negligence, then Margiotta's negligence, if any, was the proximate cause of the accident and the plaintiff is entitled to recover, even though you may believe from the evidence that the accident would not have occurred but for some remote negligence of the driver of the Lee car."

This objection was interposed: "Defendants except to the action of the court in granting Instruction No. 6 offered by the plaintiff, on the ground that it is not applicable to this case; that it states a proposition of law which is not applicable to this case. It is also confusing to the jury and tells the jury that under a certain state of facts

the plaintiff is entitled to recover; and on the further ground that it is also a repetition of plaintiff's Instruction No. 5."

There is nothing confusing about it. It presents the plaintiff's theory of the case and this he had a right to do. There is evidence to support those facts set out in it and if the jury thought that they had been established it should have rendered a verdict for the plaintiff. There is no suggestion of contributory negligence and so it was but in substance a direction to find if the jury believed the plaintiff's witnesses in respect to matters essential to his case and set out in the instruction. It was not necessary that it also set out the defendants' theory or evidence.

Exception was also taken to this instruction, numbered 8: "The court instructs the jury that if you believe from the evidence in this case that the defendants, or either of them, knowingly or wantonly added to the risks which might have been ordinarily expected under the circumstances of a motor trip from Virginia Beach to Norfolk at the time and place in question, then the defendants were guilty of culpable negligence and the plaintiff is entitled to recover."

These grounds were assigned: " * * * the instruction is not applicable to the law governing this case; that it is confusing to the jury; that it does not state in which particular the defendant knowingly or wantonly added to the risks of the plaintiff's decedent."

They are of themselves so indefinite as to be of little assistance to the trial court. Just how it was confusing we do not know and it was not necessary that there be set out evidence of those things which constituted gross negligence.

We may, however, state in passing, that the mere fact that a defendant knowingly took some unnecessary risk is not necessarily gross negligence. The language of the instruction is based upon that used by this court in *Boggs* v. *Plybon, supra.* When that opinion is read it will be seen that it is capable of no such construction. To

make one liable to a guest, the risk knowingly assumed must have been a serious risk and one wholly unnecessary. In the instant case it is not claimed that the risk assumed was slight or that there was any reason for its assumption. As we have seen, the defense was that there was no risk assumed knowingly or otherwise. Moreover, in plaintiff's instruction numbered 4, and again in his instruction numbered 5, the court told the jury that the defendants must have been guilty of culpable negligence. In defendants' instructions numbered 1 and 2 the jury was told that there should be no recovery unless the negligence was gross or culpable. Moreover, there have been four trials. Some end must be set to litigation. There has been more than one fair trial, there have been four fair trials and another should not be ordered unless the ends of justice imperatively demand it.

We are of opinion that there is no reversible error in the judgment appealed from and it is affirmed.

*Affirmed.*

Epes, J., dissenting.

I dissent from the conclusion reached by the court for the reason that I think instructions 4, 6 and 8 are all erroneous, and the giving of them constituted reversible ·error.