# Wytheville

ROY R. JONES V. MARY J. NUGENT.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Gardner L. Boothe,* for the plaintiff in error.

*Harry F. Kennedy,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action at law brought by Mary J. Nugent, who will hereafter be called the plaintiff, against Roy R. Jones, hereafter referred to as the defendant, for damages for injuries sustained by the plaintiff in an automobile accident which occurred in the State of Ohio, near the village

of Hayesville, about 4:30 P. M. on the 9th day of September, 1932.

At the time of the accident the automobile was being driven by Coey Jones, who is the wife of the defendant. The defendant and his family and the plaintiff were all residents of the city of Alexandria, Virginia, and the occasion of their being in Ohio at the time of the accident, and under its circumstances, was a visit by the wife of the defendant to the State of Iowa to see her mother, who resided there.

Mrs. Coey Jones had driven automobiles for a number of years. She had never been involved in an accident before the one in this case. She had driven to Iowa four times previous to this trip. She planned leaving Alexandria on this journey on July 15, 1932. Her husband, the defendant, asked the plaintiff to go with her, saying at one time that the bonus army marchers were leaving Washington, and at another that she would keep his wife from going to sleep. Mrs. Jones also asked the plaintiff to go with her, but the plaintiff said that she could not go at the appointed time. Mrs. Jones then abandoned her original plan as to the time of departure and awaited a time that would be convenient to the plaintiff, which was on August 4, 1932. On the morning of that day Mrs. Jones and her two minor children, both girls, and the plaintiff and the plaintiff's niece, Miss Thurgood, left Alexandria and went to Washington *en route* to Iowa.

The defendant is a physician, who was employed at the United States Health Department in Washington, and he drove the car that far, when he went into his office after bidding the party good-bye. Mrs. Jones took the wheel and, after stopping at a bank, proceeded on the trip west with the occupants referred to. This day was Thursday and they arrived in Iowa City, Iowa, about 6:30 P. M. on the following Saturday, without any untoward incident on the way.

The three ladies and two children remained in Iowa with Mrs. Jones' mother and as her visitor for some five weeks.

In the early part of September, just before the beginning of the return trip to Alexandria, Mrs. Jones had the car inspected and it was in good mechanical condition. It was equipped with three new tires and one perfectly good one, but not new. At the time of the accident they had arrived at a point a very short distance east of the village of Hayesville, Ohio. They were stopped in the eastern outskirts of the village by a stop light at the intersection of a lateral road with the highway upon which they were traveling. They then proceeded a distance of about two city blocks to the summit of a slight hill, which dropped down on the eastern side to a more abrupt declivity. Their speed was between forty and forty-five miles an hour. The lawful rate of speed outside of towns in Ohio was forty-five miles an hour. The road was of brick construction, of two car width, with a shoulder on either side about six feet wide. From the top of the hill looking east it was practically straight for at least three miles. There was nothing to obstruct one's vision and there was no traffic in either direction. The car was the property of the defendant. As they were proceeding down the incline the driver, Mrs. Jones, felt a jar which came from the right rear part of the car, and the car skidded across the road toward the left and then turned back and came across the road to the right and landed over a ditch on the right side of the road, with the front wheels on the right side and the rear wheels on the left, and then turned over. After the jar was felt and the skidding began Mrs. Jones tried to turn the steering gear with the result which we have described.

All of the occupants of the car were shaken up and bruised to some extent but the plaintiff suffered severer injuries and was taken to a doctor near by and by him taken to a hospital, where she remained from Friday, the day of the accident, until the following Monday morning when she made the remainder of the trip to Alexandria by resting upon pillows which were placed in the car for her comfort. The defendant and the plaintiff's husband, learning of the accident, had gone to Ohio to return with the party.

A trial of the case was had in which the jury rendered a verdict for the plaintiff in the sum of $2,500, which verdict was sustained by the trial court.

It was conceded that the "family purpose doctrine" does not obtain in the State of Ohio. To render a husband liable for the negligent acts of his wife the relation of principal and agent must be established. From that standpoint we have stated the facts as favorably to the plaintiff as the evidence allows. In our opinion they are wholly insufficient to show that Mrs. Jones was the agent of her husband, the defendant, in her operation of the car on the trip which she was taking.

The following Ohio cases are pertinent: *Bretzfelder* v. *Demaree,* 102 Ohio St. 105, 130 N. E. 505; *Elms* v. *Flick,* 100 Ohio St. 186, 126 N. E. 66. See also, *Rodgers* v. *Saxton,* 305 Pa. 479, 158 Atl. 166, 80 A. L. R. 280; *Klein et ux.* v. *Klein,* 311 Pa. 217, 166 Atl. 790.

Mrs. Jones testified that immediately after the accident she examined the road and that, at the point where she felt the jar in the rear of the car, there was a drop off from the brick pavement to the shoulder varying from six inches down to one or two inches and it extended from toward the top of the hill to the bottom, which distance was about a half of a block. The point at which the drop off was six inches in depth was toward Hayesville. She further testified that when she went to the place on the next day she found that this depression had been repaired by new macadam at the greater depth and by dirt from the bank at the point lower down. This testimony was uncontradicted.

In our view of the case the plaintiff has utterly failed to establish by the evidence any actionable negligence upon the part of the driver of the car. That being true there can be no liability against the defendant. It is certainly not negligence for the car to slip or skid off of the road under the circumstances of this case.

Plaintiff's counsel has cited a number of cases which hold that when the instrumentality which causes the injury is

shown to be under the management of the defendant and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, *in the absence of explanation by the defendant,* that the accident arose from a want of care.

■ In this case Mrs. Jones' explanation of the cause of the accident, in our opinion, entirely exculpates her from blame.

There was nothing to warn her that there was any trouble with the road or any defect in it. She had the right to assume that it was in a reasonably safe condition. She was not required by law to be on the lookout for obstructions.

It was said in the case of *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63, 65, through Justice Chinn: "The law is well settled that a person using a street or public way in the ordinary manner has the right, in the absence of knowledge to the contrary, to act on the assumption that the street or way, throughout its entire width, or so much of it as is intended for travel, is in a reasonably safe condition, and he is not required as a matter of law to be on the lookout for defects or obstructions therein. * * *

"Viewing the facts and circumstances in the light of the established rules of law on the subject, we feel compelled to hold that, as a matter of law, Mr. Jones cannot be held guilty of that degree of negligence which renders him pecuniarily liable for the unfortunate accident sustained by Mr. Massie on the occasion in question. There is no evidence to indicate that in failing to see the conditions at the crossing in time to avoid the injury, he 'knowingly or wantonly' added to the risks which Mr. Massie, as his guest, had assumed.

"In view of the conclusions expressed, it is unnecessary to consider the other errors assigned. The judgment of the court below will, therefore, be reversed and final judgment entered here for the plaintiff in error."

In the case of *Osborn* v. *Berglund,* 159 Va. 258, 165 S. E. 410, 411, Mr. Chief Justice Campbell, in delivering the

opinion of the court, said in part: "In view of our conclusion to affirm the judgment of the trial court, for the reason that no actionable negligence upon the part of the defendant has been shown by the plaintiff, it is entirely unnecessary to enter upon a discussion of the question of whether or not the undertaking was a gratuitous one; nor is it necessary to determine the legal status of an infant seven years of age who has, by and with the consent of the parent, been entrusted to the care and custody of another.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"With the exception of the alleged confession of negligence, it plainly appears that the defendant, while running at a speed of approximately twenty miles an hour, 'nosed out' to the left of the car twenty-five or thirty feet in front of him 'to see if another car was coming.' At a point when his vision was unobstructed he saw the Dillinger car approaching at a distance of fifty or sixty yards. He then immediately attempted to get back into the line of travel, his car hit an unseen mound or defect in the road, started sliding, and eventually collided with the Dillinger car. But for the defect in the road which caused the defendant's car to skid, it is apparent that he had ample time and space to resume his position in the rear of the car immediately in front of him. The use of the road by the defendant was in keeping with the law of the road. On account of the hard rain he was proceeding at a moderate rate of speed, to-wit, twenty miles per hour. He was not crowding the car in front of him. He was in the exercise of due care when he 'nosed' his car to the left to observe whether there was an approaching car. In the absence of knowledge to the contrary he had the right to assume that the highway was in a reasonably safe condition for travel, and the law imposed upon him no duty to be on the lookout for defects. \* \* \*

"Under the facts and circumstances detailed, the court would have been warranted in sustaining the motion to strike, and therefore the jury were justified in finding that the defendant was not guilty of actionable negligence, and that the accident was caused by the defect in the highway.

"The most that can be said of the case is that an unfortunate accident has occurred, for which there is no legal liability."

It follows from what we have said that we reverse the judgment of the trial court and enter judgment for the defendant.

*Reversed, and judgment entered.*