MRS. CAMELIA FARFOUR v. K. FAHAD AND REV. ELIAS ZAYTOUN.

(Filed 19 October, 1938.)

**1. Courts § 11: Automobiles § 19—**

In an action by a guest to recover for injuries sustained in an automobile accident occurring in the State of Virginia, liability of defendants, if any, must be determined by the laws of that State, which requires a showing of gross negligence in order for the guest to recover.

**2. Automobiles § 9—Evidence held insufficient to support inference that accident was result of sleepiness of driver.**

The evidence disclosed that the driver of a car ran into a curbing surrounding a grass plot separating the highway into north and southbound traffic, that the accident occurred in the State of Virginia at three o'clock in the morning as the car was being driven on a trip from a

point in this State northward. Plaintiff introduced testimony that just after the accident the driver remarked that his eyes were tired. *Held:* Testimony as to the remark of the driver, even taken in connection with attendant circumstances, is not relevant to show that the driver negligently ignored premonitions of sleep, and is insufficient to support the inference that the accident was the result of sleepiness on the part of the driver.

**3. Trial § 22b—**

The fact that defendant fails to object to the admission of certain evidence which might be relevant in these connections, does not preclude the court from determining its irrelevancy in passing upon the probative value of the evidence.

**4. Automobiles § 10—Held: Evidence failed to show causal connection between failure to keep in right lane and the accident in suit.**

The evidence disclosed that the highway in the State of Virginia where the accident occurred was divided in the center by a grass plot surrounded by a curb, that there were two lanes for traffic divided by a middle line on each side of the grass plot, and that the driver of the car in which plaintiff was riding hit the curbing bounding the left traffic lane on the part of the highway for traffic going in his direction, and that there was no other traffic on the road at the time. Plaintiff introduced in evidence statute of the State of Virginia requiring cars on such highways to keep to the right lane unless passing other vehicles or preparing for a left turn. of the State of Virginia requiring cars on such highways to keep to the right lane has no causal connection with the accident, since a like disastrous result might have occurred had he run off the right side of the road, the purpose of the statute being to prevent collisions between vehicles.

**5. Automobiles § 18a—**

There must be a causal connection between the violation of a safety statute and the injury in order for the negligence to be actionable.

**6. Automobiles § 22—Laws of Virginia do not preclude appellate court from determining sufficiency of evidence of gross negligence.**

While the courts of Virginia treat the difference between simple negligence and gross negligence as one of degree, and while ordinarily the evidence must be submitted to the jury upon proper instructions from the court as to the degree of negligence involved, the verdict of the jury is not conclusive, and the matter is not beyond review in the appellate court.

**7. Same—Evidence held insufficient to show gross negligence in this action by guest to recover for injuries under Virginia law.**

This action was instituted by a guest in a car to recover for injuries received in an accident in the State of Virginia. The evidence disclosed that the car was being driven northward and that the driver of the car ran into the curbing bounding the left traffic lane and separating the northbound traffic from the lanes for southbound traffic, that the accident occurred early in the morning when there was no other traffic on the highway. Neither party contended that the doctrine of *res ipsa loquitur* applied. *Held:* The evidence fails to show that the accident resulted from the negligent failure of the driver to heed premonitions of sleep, and fails to show a causal connection between the driver's failure to keep in the

FARFOUR *v.* FAHAD.

right northbound traffic lane, and the injury in suit, and defendants' motions to nonsuit should have been granted for failure of the evidence to disclose gross negligence required under the Virginia law to support a recovery.

APPEAL by defendants from *Hamilton, Special Judge,* at April Term, 1938, of WAYNE. Reversed.

The plaintiff brought this action to recover damages for injuries which she alleges she sustained through the negligence of the defendants while riding as a guest of Fahad in a car driven by Zaytoun within the State of Virginia.

The evidence pertinent to this opinion is substantially to the following effect:

A party composed of Mrs. Farfour, the plaintiff, Mrs. Kanan, H. Simon, and Father Zaytoun left Wilson, North Carolina, about seven o'clock in the evening in a car driven by Zaytoun, intending to attend a funeral at Dover, New Hampshire. Fahad had asked Zaytoun to drive the car, carrying the others as guests, and had arranged with Simon to go with the party, and "pay all the expenses." They arrived at a point near Alexandria, Va., about three o'clock in the morning, Zaytoun driving. At this point, just beyond a crossroad coming in from the right, there were two one-way roads, each about twenty feet wide, separated by a grass plot, which was surrounded by a concrete curbing from five to eight inches high. Each one-way road had a line marking the middle, dividing the road into two lanes. The car was going about 45 miles an hour, and, just beyond the intersecting road mentioned, entered the right-hand one-way road, struck the curbing on the left-hand side of this road, ran up on the grass plot, turned over, and injured the plaintiff.

H. Simon testified that he was on the trip in the front seat with Zaytoun, who was driving; that when they got to the point mentioned they did not see anything ahead of them except the "boulevard," and: "We hit the next one and the back wheel of the car hit the next curb and turned around and turned over. It was a pretty fair night. It was a one-way road. There was a little grass boulevard between the two one-way roads. There was a side road on our one-way road on the right side leading into it just before the collision. . . . We were traveling about 45 miles an hour. . . . It didn't skid. . . . After it hit the curbing, I looked at the road and where it had hit. It was a paved road. I seen oil that probably came out of the car. I didn't see any oil except that right at the car. . . . There were no cars meeting us, or ahead of us, just before we got to the place of the collision. The road was entirely clear. . . . In my conversation with him (Father Zaytoun) afterwards, he said he was tired; he said his eyes were kind of

tired. It was three o'clock in the morning. I can't tell if he was asleep; I didn't see him asleep. That's what he said, that he was tired, his eyes tired. . . . Father Zaytoun had been driving all of the way; he had been driving very carefully and probably knew what he was doing. . . . At the point of the second grass plot there was a little curbing around the grass. The front part of the car passed that curbing, but the back wheel hit the curbing. The back wheel of the car slid, or skidded, or did something to get into the curbing and it stopped immediately, went only just a few feet from that immediate point and turned around. After it turned around it turned over on its side."

On cross-examination: "I don't know what caused the left rear to slide into the side of that pavement. I didn't say 'slided'; I said 'hit the curb.' I don't know how he got to it. The front part of the car was going straight. No part of the car touched the paving, except the left rear wheel."

Joe Hallow testified that he went to the scene of the collision some forty or fifty days afterwards and was shown the place. He testified that there was a black line dividing the two lanes of the one-way road which was twenty feet wide. He stated that Father Zaytoun told him his front wheel went over first and his back wheel got broken before the car turned over; that he asked Father Zaytoun as to whether he was asleep, and the latter said he "didn't think he was asleep. He said he wasn't asleep."

Mrs. Margaret Kanan testified that prior to the accident, Father Zaytoun was driving at a high rate of speed "and the first thing we knew we just hit this curbing." . . . That "the front wheels hit and then we went over the parkway, and then the left rear wheel hit the curbing, and that's when it broke down and caused the car to turn over on its side." Witness further testified that the lanes were about twenty feet wide, the black lines on the surface in the center; that the automobile did not slacken its speed on or before it hit the curbing and turned over, but it seemed like the car was going faster instead of slower after it struck.

On cross-examination, this witness stated the rate of speed was about 45 or 50 miles an hour.

The plaintiff offered in evidence the entire 1936 Motor Vehicle Code of the State of Virginia, and called special attention to the following provisions:

Section 2154, subsection 109: . . . "Reckless driving within the meaning of this section shall be deemed to include the following offenses, which are expressly prohibited: . . . Driving to the left of the center of the street or highway." Section 2152, subsection 112: . . . "Except as otherwise provided in section 2154-115" (that is, as to pass-

ing other vehicles), upon all highways of sufficient width the driver of a motor vehicle shall drive the same upon the right half of the highway, unless it is impracticable to travel on such side of the highway, and except when overtaking or passing another vehicle."

"113. In crossing an intersection of highways the driver of a vehicle shall at all times cause such vehicle to travel on the right half of said highway, unless such right side is obstructed or impassable."

"114. Whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations: A vehicle shall normally be driven in the lane nearest the right-hand lane, edge, or curb of the highway, when said lane is available for travel, except when overtaking any vehicle, or in preparation for a left turn. A vehicle shall be driven as nearly as practicable entirely within a single lane, and shall not be moved from such lane until the driver has ascertained such movement can be made with safety."

In addition to this, numerous opinions of the Supreme Court of Virginia, dealing with "guest cases," were introduced by plaintiff and by the defendants.

At the conclusion of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendants moved for judgment as of nonsuit, which was denied.

The trial resulted in a verdict for the plaintiff, and defendants appealed.

*Ehringhaus, Royall, Gosney & Smith, P. B. Edmundson, and Howard E. Manning for plaintiff, appellee.*

*Langston, Allen & Taylor for defendants, appellants.*

SEAWELL, J. Since the alleged negligent act or omission of duty, and the injury consequent thereupon, occurred in the State of Virginia, the liability of the defendants, if any, must be judged by the laws of that State. *Rodwell v. Coach Co.,* 205 N. C., 292, 295; *Wise .v. Hollowell,* 205 N. C., 286, 289; *Howard v. Howard,* 200 N. C., 574. Under the Virginia law, a guest in an automobile may not recover for simple or ordinary negligence of the host, but only when the negligence has been gross. *Margiotta v. Aycock,* 162 Va., 557, 174 S. E., 831; *Boggs v. Plybon,* 157 Va., 30, 160 S. E., 77, 80; *Jones v. Massie,* 158 Va., 121, 163 S. E., 63. Admitting this, plaintiff argues that she has shown gross negligence in the case at bar; and that, furthermore, where there is negligence shown, it is for the jury alone, at least under the circumstances of this case, to say whether it is ordinary or gross, the difference being one of degree only, and the verdict in favor of the plaintiff withdraws that phase of the case from review, citing *Thomas v. Snow,* 174

S. E. (Va., 1934), at pages 838 and 839; *Yonker v. Williams,* 192 S. E. (Va., 1937), 753, 755.

Considering the evidence on defendants' motion for judgment of non-suit in the light most favorable to plaintiff, we may well doubt whether there is sufficient evidence of negligence, either simple or gross, to go to the jury.

It is agreed by both counsel for plaintiff and counsel for defendants that the doctrine *res ipsa loquitur* does not apply—by the plaintiff's counsel because, as they contend, they have shown the negligent cause of the collision; by the defendants' counsel because, as they contend, the collision itself might point to many things, some of them not inconsistent with due care. *Kline v. Buten,* 169 Wis., 395; *Butner v. Whitlow,* 201 N. C., 749, 751, 161 S. E., 389; *Rigsby v. Tritton,* 143 Va., 903, 129 S. E., 493. But plaintiff emphasizes two phases of the evidence as showing negligence: The testimony of H. Simon, with attendant circumstances, from which plaintiff contends it may be inferred that the driver of the car negligently ignored premonitions of sleep; and evidence that at the time of the collision with the curb the driver was on the wrong side of the road, in violation of the Virginia traffic law.

As to the first proposition, it may be conceded that if the evidence is sufficient to warrant the inference of fact suggested, plaintiff might recover on a showing of gross negligence. *Lee v. Moore,* 191 S. E. (Va.), 589. The only evidence which the plaintiff points out as warranting an inference of drowsiness or sleep is the statement of Simon to the effect that Zaytoun admitted after the occurrence that his eyes were tired, and such circumstances as may have strengthened or given further significance to such statement. We think this circumstance, as evidence that a condition of drowsiness or sleepiness had supervened, is wanting in relevancy, and the suggested inference is speculative and unwarranted; and the evidence for the plaintiff strongly tends to contradict that theory. The fact that the defendants did not object to the introduction of this testimony, which might have been relevant from other points of view, is not material, since we are discussing only its probative value.

As to the other proposition, that is, that the collision with the curbing was caused because of the negligence of the defendant Zaytoun in driving on the left-hand lane of a one-way road, we have to examine the conditions of traffic existing at the time of the occurrence, as well as the apparent purpose of the Virginia law requiring that the driver of an automobile use the right-hand lane.

The evidence shows that the road was free from traffic—no cars going or coming either way—and the apparent purpose of the statute was to prevent collisions with oncoming or passing cars by requiring the driver

to keep within his own lane. The disaster could hardly be attributed to the violation of this particular traffic law. While, of course, it is true that the defendant would not have come in contact with the left-hand curb if he had been driving on the right-hand side, this may have served merely to shift the location of the accident, just as the stage reached in their journey located it, geographically, in the State of Virginia. That the car went off the left-hand side of the road, under the circumstances, seems to us to have no more significance than if it had gone off the right-hand side, which seemed to offer equal facilities for dangerous contact. "The breach of a statute is negligence *per se,* but there must be a causal connection between the disregard of the statute and the injury inflicted." *Burke v. Carolina Coach Co.,* 198 N. C., 8, 150 S. E., 636; *Ledbetter v. English,* 166 N. C., 125, 81 S. E., 1066; *Chancey v. R. R.,* 174 N. C., 351, 93 S. E., 834; *Elder v. R. R.,* 194 N. C., 617, 140 S. E., 298; *Gaines v. Campbell,* 159 Va., 504, 514, 166 S. E., 704; *Gilley v. Simmons,* 145 Va., 549, 134 S. E., 550. At any rate, we cannot see in it anything approaching gross negligence.

While the Virginia courts regard the difference between simple, or ordinary negligence, and gross negligence, as one of degree, and while ordinarily the evidence must be submitted to the jury upon proper instructions from the court as to the degree of negligence involved (*Thomas v. Snow, supra; Yonker v. Williams, supra*), we do not understand that the verdict of the jury is necessarily conclusive, and the matter beyond review in the appellate court. *Boggs v. Plybon, supra, Margiotta v. Aycock, supra. Stubbs v. Parker,* 169 Va., 683, 192 S. E., 820, 822, quotes with approval from *Margiotta v. Aycock, supra:*

"Of course the jury's verdict is not always conclusive. In cases of ordinary negligence this Court has always freely exercised its right to say that it is unsupported by the evidence. By the same token it has the right to say, notwithstanding the verdict, that there is no evidence whatever of gross negligence." *Jones v. Massie, supra; Young v. Dyer,* 161 Va., 434, 170 S. E., 737; and *White v. Gregory,* 161 Va., 414, 170 S. E., 739.

Even making the cautious approach to the subject required under the rule in *Thomas v. Snow, supra,* and *Yonker v. Williams, supra,* we feel free to say that if there was any negligence of the defendants at all, it was no more than simple or ordinary negligence, and there is no evidence of gross negligence in the record. *Boggs v. Plybon, supra; White v. Gregory,* 161 Va., 414, 170 S. E., 739; *Young v. Dyer, supra.*

We therefore think there was error in refusing defendants' motion for judgment as of nonsuit, and the judgment is

Reversed.